# Richmond.

B. M. PAYTES, ET AL. v. J. B. DAVIS.

March 19, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Hudgins, JJ.

The opinion states the case.

*S. M. Nottingham,* for the plaintiffs in error.

*E. H. DeJarnette, Jr.,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

On November 26, 1927, J. B. Davis was struck and injured by an automobile truck on a public road in Orange county. He brought suit and obtained a verdict for $500.00, which was reduced by the trial court to $300.00.

For the defendants it is said that the evidence supports no recovery at all, while the plaintiff charges that the judgment should have been for the full amount of the jury's verdict. This case is now before us on error and cross-error.

It turns upon the facts and not upon the law applicable thereto; about it there is little dispute; the instructions have not been copied into the record. Mr. Davis had occasion to go to the town of Orange and was on his way as a guest in a truck owned and driven by his friend, Mr. Bledsoe, when hurt. Mr. Bledsoe had been asked to take up and carry to Orange a can of cream set down on the roadside for him. This Bledsoe, for the moment, overlooked. He drove past it for a short distance and pulled up on the right-hand side of the road. Davis got out on his right-hand side and was going back for the can when he was struck by another truck going in the opposite direction and driven by R. T. Lane. Mr. Davis first stated that the Bledsoe truck stopped twenty or twenty-five yards beyond the can; that he got out and walked around in front of the engine and stood there until a third truck which

was following them had passed, when he started down the road and had gotten opposite the can at the time of the accident. He also said that he walked down the right-hand side of the road and was about three steps from the can and about four and a half feet from the side drain or ditch when hit, and that the can was at least sixty yards from his truck. Again he said that he had walked about twenty yards before he was struck, and that he did not cross the road directly, but in doing so bore to his right; that his hearing is not keen; that he did not look back, and was not then thinking about a car.

On cross-examination he said: "I was in the traveled way when I was struck. I gave no signal. There was no room between me and the edge of the ditch for a car to pass. I walked diagonally across the road. I walked more on the right side of the road than on the left. I had not started to cross when I was struck."

He also testified that "Lane said he saw me, and knew I did not see him."

He was hit on the right hip.

The discrepancies in this witness' judgment of distances and in the positions in which he places himself at the moment of the accident are immediately apparent. It is also to be noted that he states that he had crossed the road and was in four and a half feet of a drain on the far side when hit and that he "had not started to cross it when struck." In other words, he does not seem to have had any clear recollection about his movements on that occasion.

Mr. Bledsoe states that they went twenty-five or thirty yards beyond the can before he stopped; that Davis then got out on the right-hand side of his truck, walked around in front of the engine, and that he did not see him afterward. While Davis stood there another truck overtook and passed them. About that time the Lane truck came up and sounded its horn about thirty yards in front of him. This truck was not then

going rapidly and was stopped about thirty yards behind his truck and a little below where the can stood.

When Bledsoe next saw Davis he was in the middle of the road, sixty or sixty-five feet back of the Bledsoe truck, with Lane leading him to it. He seemed to have been struck by a fender, but there was nothing to show that he had actually been run over.

Lane testified in his own behalf, and said that he did not see Davis "until he walked right in front of my light. He stepped in front of my truck" and in front of the left-hand light. He was then coming swiftly across the road about twenty-five feet behind the Bledsoe truck. Witness did not see him until a moment before the impact and did not tell him that he did; he was traveling at a moderate rate of speed and stopped his car ten or twelve feet beyond the Beldsoe truck. At another place he said that the accident occurred twenty-four feet beyond that truck.

When this witness approached the Bledsoe truck he slowed up for the approaching third truck which was then passing it and blew his horn when about twenty yards away. He said that if Davis passed in front of the Bledsoe truck his failure to see him must have been because his vision was shut off by this third truck.

It will be seen that this witness also is confused as to distances. In one place he said that he stopped ten or twelve feet beyond the Bledsoe truck and at another that he struck Davis twenty-four feet beyond it.

J. B. Cox was in the truck with Lane. His testimony is that Davis stepped out from behind the Bledsoe truck when he was struck and was not seen until he was within three or four feet of the front of their car. He also said that their truck was about ten feet from the Bledsoe truck when it stopped, and that Davis was fifteen or eighteen feet from it when struck. At another point he said that Davis was twelve or thirteen feet behind the Bledsoe car when hit, and at another

that he might have been thirty feet behind it. These discrepancies in distances cannot be reconciled and it is not necessary that they be.

All of the evidence goes to show that the Lane truck was traveling about fifteen miles an hour and was twenty or thirty yards in front of the Bledsoe truck when Davis, who was waiting for the third truck to pass, started down the road to the milk can. He was sixty-two years old and presumably not walking very rapidly and so must have been hit within a short distance. If we accept as true, as we do, the statement that Lane told Davis he saw him before the accident, that statement is not in conflict with his to the effect that he saw him just before the moment of impact. Davis never saw the truck at all. He was hit by its fender on his right hip and so he could not have been where he placed himself, which was on the right-hand side of the road going towards the milk can and four and a half feet from the ditch.

██ We do not lose sight of the fact that we are dealing with a jury's verdict, approved by the trial court, but if we assume as proven the negligence of Lane in failing to see Davis, it is perfectly plain that Davis was likewise negligent. From his own testimony his hearing is defective. Thus handicapped he undertook to cross a much traveled highway without looking and with no thought of danger from approaching cars. One must look before crossing a railroad over which may pass only a few trains a day. The necessity for looking in crossing some highways used daily by hundreds of automobiles is quite as imperative. They occasion thousands of deaths yearly. A high-powered car moving rapidly is quite as deadly as a locomotive. The plaintiff was guilty of contributory negligence. *Stephen Putney* v. *Ormsby's Admr.*, 129 Va. 297, 105 S. E. 563; *Green* v. *Ruffin*, 141 Va. 628, 125 S. E. 742, 748, 127 S. E. 486.

██ Can the doctrine of the last clear chance be applied to the facts in this case? One man cannot run another down

merely because he is negligent, and so when peril is discovered or when it should in the exercise of ordinary care have been discovered, and when it appears that the plaintiff is unconscious of his peril or is in a situation from which he cannot by the exercise of ordinary care extricate himself, liability follows a clear chance to avoid injury, not merely a chance but a clear chance. All things necessary to a recovery in such circumstances the plaintiff must prove by a preponderance of evidence.

"It should and must be emphasized that a plaintiff is not entitled to recover under this doctrine upon a mere peradventure. He has no right to hold the defendant liable merely upon showing that perhaps, if the defendant's agents had responded properly, promptly, instantaneously, he might have been saved. The burden is upon him to show affirmatively by a preponderance of the evidence which convinces the average mind that by the use of ordinary care, after his peril was discovered, there was in fact a clear chance to save him. It is insufficient to show that there was a mere possibility of so doing." *Washington, etc., Ry.* v. *Thompson,* 136 Va. 597, 118 S. E. 76, 78.

"When the defendant is aware, or ought to be aware from facts and circumstances brought home to his knowledge, that the plaintiff is unconscious of his peril, or is in a situation of peril from which he cannot by the exercise of ordinary care on his part thereafter extricate himself, or when in the second class of cases such state of facts would have been known to him had he been performing the duty of lookout imposed upon him by law, *then, and not until then,* does the rule of the last clear chance become applicable, * * *." *Barnes* v. *Ashworth,* 154 Va. 218, 153 S. E. 711, 719.

Another consideration is to be remembered. Men as reasonable beings are supposed to take reasonable care to protect themselves, and the burden of this assumption rests upon them until it becomes patent to ordinary men that this rule of

conduct can no longer be relied upon. In *Green* v. *Ruffin, supra,* the court said:

"It is the well established rule of law in Virginia in the application of the doctrine of the last clear chance that, seeing a person in the apparent possession of all his faculties with back turned to an approaching vehicle, or with head bowed or turned away, approaching the track of the vehicle, with no superadded circumstances or evidence of unconsciousness of peril, does not impose upon the operator of the vehicle the duty of prevision; he has the right to assume that a normal person in a situation requiring the exercise of prudence will use his faculties in time to prevent his injury. That is the course of human experience."

In the instant case Davis does not claim to have seen the automobile which struck him and he is manifestly mistaken in describing his position when the accident happened. He could not have been on the right side of the road going in the direction of the milk can for he was hit by the fender of the automobile on the right hip as it came up behind him. Lane had not theretofore seen him and it is possible that he may be mistaken in the reasons which he ascribes for his failure to do so. We may, for the sake of argument, concede that this failure was negligence. But suppose he had seen him. How can we say that there was anything in his conduct which would have led the driver to believe that Davis intended to cross the road and would step in front of his car. That he did suddenly step in front of it is proven by Lane's evidence. Lane was an interested witness, but Cox was not, and Cox has testified to the same state of facts.

As a prerequisite to the right to recover plaintiff must establish negligence on the part of the defendant and must further show that it contributed to his injury. When this is done a case is made unless contributory negligence is shown by the plaintiff's own evidence. If it is so shown or if it is afterward established by the evidence for the defendant, and

if this contributory negligence was measurably responsible therefor, then there can be no recovery unless, after all of this, there was a clear chance which the defendant should have availed himself of to avoid the accident. *Etheridge* v. *Norfolk So. R. Co.*, 143 Va. 789, 129 S. E. 680.

If we accept as true Cox's statement, then there was no primary negligence and this case is at an end. If we look to that introduced on behalf of the plaintiff we do not know where Davis was when hurt.

The uncontradicted evidence is that Lane sounded his horn when twenty or thirty yards in front of the Bledsoe truck. The third truck was then passing it and it was then that plaintiff, who was standing in front of the Bledsoe truck and on Lane's left, started down toward the milk can. Lane was then traveling at the rate of about fifteen miles an hour and Davis could have gone but a short distance before he was hurt. He was hit on the right hip and so it is perfectly plain that he was not where it is now sought to place him. This judgment to stand would have to rest upon conjecture. To be valid it must be supported by evidence.

For reasons stated the judgment of the court below must be reversed and the case dismissed.

*Reversed.*