# Richmond

## WILLIAM J. BRYAN v. JAMES FEWELL.

November 27, 1950.

Record No. 3704.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Wallace N. Tiffany*, for the plaintiff in error.

*Upton H. Richards* and *Robert Lewis Young*, for the defendant in error.

HUDGINS, C. J. delivered the opinion of the court.

James Fewell, plaintiff in the trial court, recovered a verdict and judgment in the sum of $6,000 against William J. Bryan, for personal injuries sustained when struck by an automobile driven by defendant. Bryan contends in this court that he was not negligent and that plaintiff was guilty of contributory negligence.

The main arguments of the respective parties are based on inferences to be drawn from the evidence, as there is no substantial conflict in the testimony.

The accident occurred between 11:00 and 11:30 p. m. on December 12, 1948, on Main street, that part of Highway No. 55, within the corporate limits of The Plains, which has a population (according to the 1940 census) of 372. Main street extends approximately east and west, is 40 feet wide, with sidewalks on each side, and practically level and straight, with a slight curve to the east. Two solid white lines indicate the center of the street.

Defendant was driving his 1946 Plymouth automobile

west on Main street. When he reached a point approximately 120 feet from the scene of the accident, he saw plaintiff step from the north sidewalk and proceed south 2 to 5 feet into the street, where he stopped, or paused, and looked in the direction from which defendant was coming. He then continued in his attempt to cross the street from north to south, and, as he stepped over the center of the 40 foot street, he was struck by the left bumper of defendant's automobile, and knocked over into the east-bound traffic lane, with his head lying opposite the left front wheel, "almost under the left bumper."

Defendant testified that when plaintiff stopped in the traffic lane and looked in his direction, he assumed that plaintiff saw the lights of his automobile and would not continue his course across the street directly in front of him. When plaintiff stopped the situation did not appear to defendant to be dangerous. If plaintiff had remained where he was, defendant had from 15 to 18 feet in which to pass in safety between him and the center of the street. At that moment it did not seem necessary to sound the horn, as plaintiff knew, or should have known by use of his eyes, that the automobile was near and approaching. The sounding of the horn would have given him no additional information. When plaintiff started to move from his standing position defendant had covered approximately half the distance between them—that is, at that moment defendant was approximately 60 feet away. He immediately applied his brakes and skidded his wheels from 40 to 45 feet. In so doing his automobile swerved to the left and struck plaintiff as he crossed the two white lines. The automobile was stopped immediately after the impact, at a slight angle, near the center of the street,—that is the left front wheel was 6 to 8 inches to the south of the center of the street, and the other three wheels were to the north of the center.

Plaintiff contends that, notwithstanding the fact that defendant testified that he was traveling at only 20 miles an hour, and another witness for defendant said that the auto-

mobile was traveling at the rate of 20 to 25 miles an hour, the jury had a right to infer from the length of the skid marks that the speed of the automobile was in excess of these estimates.

The pertinent parts of the table used by the New York Bureau of Motor Vehicles to indicate the speed and the distance within which a motor vehicle can be expected to travel and stop on a highway that is paved, dry and free from loose material, are as follows:

> A vehicle traveling at 20 miles per hour, goes 29.3 feet per second, and with four-wheel brakes, in excellent condition, can be stopped in 16 feet, brakes in fair condition, in 22 feet.
> A vehicle traveling at 25 miles an hour, goes 36.3 feet per second, and with four-wheel brakes, in excellent condition, can be stopped in 25 feet, brakes in fair condition, in 35 feet.
> A vehicle traveling at 30 miles per hour, goes 44 feet per second, and with four-wheel brakes, in execllent condition, can be stopped in 37 feet, brakes in fair condition, in 50 feet.

Section 46-284 of the 1950 Code provides that on a dry, hard, approximately level stretch of highway free from loose material, four-wheel service brakes "shall be capable of stopping the motor vehicle at a speed of twenty miles per hour within a distance of twenty-five feet."

While the testimony is to the effect that it had rained prior to the accident and the street was wet or damp, there is no evidence tending to show that this condition would substantially affect the stopping of motor vehicles traveling at a lawful and reasonable rate of speed.

The court instructed the jury on the issue of defendant's negligence substantially as follows: That the rights of plaintiff and defendant in the use of the highway at the point of the accident were equal; that the duty of each to exercise reasonable care was mutual and reciprocal; that it was the duty of defendant to keep a proper lookout for and to exer-

cise reasonable care not to injure plaintiff, and if he was at the time of the accident operating his vehicle in a careless and reckless manner, and at a speed, or in a manner, so as to endanger the life or limb of plaintiff, such conduct would constitute negligence.

Fair minded men might differ as to whether defendant was guilty of negligence; hence the testimony on this issue presented a question for the jury.

Defendant's second contention is that plaintiff is not entitled to recover because his own testimony establishes his contributory negligence as a matter of law.

Plaintiff, a large man, 74 years of age, blind in his left eye, walked westwardly on the north sidewalk of Main street approximately 120 feet, where he stopped and looked east and west for approaching traffic. He said, on seeing no traffic approaching from either direction, he started across the street, and stopped 2 feet from the north curb, when and where he again looked east and west, and saw no traffic approaching. He continued across the street at approximately right angles. He did not see defendant's automobile until he heard the screech of the brakes, and at that time the lights were "right on" him, 5 to 10 feet away, the automobile striking him as he crossed the white lines.

His testimony on the subject is as follows:

"Q. A person standing on the sidewalk looking, don't you have a perfectly clear view of any traffic coming from the East for a distance of at least one hundred and fifty yards?

"A. Oh, yes, of course, I could see, and there was not any car there.

"Q. And as a matter of fact, it is perhaps two hundred yards you can see?

"A. Yes, sir. * * *

"Q. * * * how far did you walk out on the Street, four, five or six feet? * * *

"A. I reckon about two feet; something like that.

"Q. You stopped and looked again?

"A. Yes, and I kept on looking, and I was going to step with my left leg, and the car came right down.

"Q. After getting on the Street, there was still nothing coming in either direction?

"A. No, Sir.

"Q. Then you kept looking?

"A. Yes, I kept looking.

"Q. Both ways?

"A. Yes, Sir.

"Q. When did you first see this car?

"A. I never seen it until I saw the lights right on me. No, Sir, not until the lights were on me. I heard the brakes screech. When I came to, I was lying right beside the car.

"Q. Could you estimate how close he was to you when you first saw him?

"A. I could not actually tell you. It did not look like it was over five or ten feet; something like that. * * *

"Q. There were no obstructions in the Street to prevent your seeing the car?

"A. No, Sir, indeed there was not any.

"Q. And you just cannot account for this car being five or ten feet from you when you first saw it?

"A. Indeed I cannot. It ran up on me so quick; I heard the brakes."

G. W. Yurgatis, a witness for defendant, testified that he was walking westwardly on the sidewalk on the south side of Main street, close to the scene of the accident, and that when he first saw the Bryan car plaintiff was "about a couple of feet from the sidewalk," and "he stopped to look," "then he started off again," and made a couple of steps fast to make it across, and he was struck about the center of the street.

When defendant saw plaintiff stop in the street 2 to 5 feet from the north curb and look directly towards him, apparently in possession of his faculties, defendant had a right to assume that plaintiff would not attempt to continue across the street immediately in front of his automobile.

The law does not impose upon the operator of a vehicle the duty of prevision. He has the right to assume that a normal person in a situation requiring the exercise of prudence will use his faculties in time to prevent injury to himself. "That is the course of human experience." *Green v. Ruffin*, 141 Va. 628, 125 S. E. 742, 127 S. E. 486; *Paytes v. Davis*, 156 Va. 229, 157 S. E. 557.

Plaintiff's own testimony brings the case within the principles applied in *Hooker v. Hancock*, 188 Va. 345, 49 S. E. (2d) 711, and numerous cases there cited, to the effect that if a plaintiff carelessly undertakes to cross a busy thoroughfare without looking, or if he looks, fails to see or heed traffic that is obvious and in dangerous proximity, and continues on into its path, he is guilty of negligence as a matter of law.

The judgment of the trial court is reversed, the verdict of the jury set aside, and final judgment will be entered for defendant.

*Reversed and final judgment.*