# Richmond

## J. P. WONG v. TERMINAL CARS, INCORPORATED, ET AL.

January 18, 1960.

Record No. 5021.

Present, All the Justices.

The opinion states the case.

*James A. Howard* (*William E. Baggs; Breeden, Howard & Mac-Millan,* on brief), for the plaintiff in error.

*Paul M. Lipkin* (*Goldblatt & Lipkin,* on brief), for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

█ This case involves an automobile-pedestrian accident. Wong, the pedestrian, sued Terminal Cars, Incorporated, and Rufus G. Miller, alleging negligence resulting in personal injuries. Responsive pleadings were filed denying negligence on the part of the defendants and asserting negligence on the part of the plaintiff. The jury rendered a verdict in favor of the plaintiff, which, upon motion, was set aside and final judgment entered for the defendants, from which judgment Wong appealed.

The question presented is whether or not the trial court erred in holding that Wong was guilty of contributory negligence as a matter of law.

The record discloses that on September 29, 1957, at approximately 7:30 p.m., plaintiff, who was 77 years of age, was struck by a taxicab owned by Terminal Cars, Incorporated, and operated by Miller. The accident occurred within a business district of the City of Norfolk when plaintiff was undertaking to cross City Hall Avenue at its intersection with Metcalf Lane. It was a dark, rainy night.

At the point of collision City Hall Avenue runs in an east-west direction with four lanes of travel, two lanes serving each direction. Metcalf Lane runs north and south between Plume Street and City Hall Avenue. It is eleven feet wide and is regularly used for one-way southbound vehicular traffic. There were no sidewalk facilities or pedestrian walkways along Metcalf Lane, and while the lane did not cross City Hall Avenue it intersected same on the southern side. On both the north and south side of City Hall Avenue were sidewalks.

The plaintiff had proceeded westwardly along the sidewalk on the south side of City Hall Avenue, and when he reached Metcalf Lane he turned to his right and was proceeding across the avenue when he and defendants' cab which was moving westwardly collided.

Wong testified that when he reached the middle of the avenue he observed defendants' cab approaching some 40 to 50 feet away; that he stood still there in a position about one foot in the inside lane for westbound traffic; that he did not move from that point until he was struck; that he did not know what part of the cab struck him, and that the cab crossed in front of him.

The cab driver stated that plaintiff walked into the side of the cab. There was no marked pedestrian walkway at the point.

Plaintiff contends that by virtue of § 46-243, Virginia Code, 1950, in effect at the time of the accident (now § 46.1-230, 1958 Replacement Volume), he had the right of way over the oncoming cab. The section provides:

"When crossing highways or streets within incorporated towns and cities, pedestrians shall not carelessly or maliciously interfere with the orderly passage of vehicles. They shall cross wherever possible only at intersections. They shall cross only at right angles. Pedestrians crossing highways or streets at intersections shall at all times have the right of way over vehicles making turns into the highways or streets being crossed by the pedestrians."

As noted, this section provides that pedestrians shall cross wherever possible only at intersections, and shall cross only at right angles; that if the pedestrian complied with the above he would have the right of way "over vehicles *making turns* into highways or streets being crossed by the pedestrians." In this instance the vehicle involved was not making a turn into the street as contemplated, and hence the statute (§ 46-243) did not give the pedestrian the right of way.

The statute applicable to vehicles already in the street, as contrasted with "vehicles making turns into the highways or streets being crossed by the pedestrians," is § 46-244, Virginia Code, 1950, in effect at the time of the accident (now § 46.1-231, 1958 Replacement Volume). The pertinent part of the section reads:

"The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices.

"No pedestrian shall enter or cross an intersection regardless of approaching traffic. * * *."

From a reading of this section it is obvious that a pedestrian does not have the right of way over vehicles at all intersections. In order to have the right of way under this section the pedestrian must cross (1) within a clearly marked crosswalk, or (2) at any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block; neither of which existed in this instance. This being so, while the plaintiff had the right to cross at this intersection, he had no preferred right over on-coming traffic. On the contrary, the duties of the pedestrian and the cab driver were mutual and reciprocal, each being charged with the duty of exercising reasonable care.

Obviously, a misconstruction of the statutes above quoted caused the trial court to give Instruction P-1, over the objection and exception of the defendants, which instruction told the jury that "if you find from the evidence that Wong, the plaintiff pedestrian, started across City Hall Avenue at the intersection of Metcalf Lane before the car driven by the defendant, Miller, reached the intersection of City Hall Avenue and Metcalf Lane, then you are instructed that he, Wong, had the right of way over the car driven by the said defendant, * * *."

The giving of this instruction was error. Here Wong's attempted crossing of the avenue at this intersection did not, in itself, constitute negligence, but he did not have the right of way under the circumstances.

In considering defendants' motion to strike plaintiff's evidence the trial judge stated: "I am going to let it go to the jury, but I am pretty sure I will set aside any verdict for the plaintiff." Thus the court indicated his belief that plaintiff was guilty of contributory negligence as a matter of law.

The plaintiff admittedly had crossed beyond the center line of the avenue and was one foot into the lane for westbound traffic. He was dressed in dark clothing. According to his own testimony he saw the taxicab approaching 40 to 50 feet distant. No other traffic was in range at the time of the accident. He says he stood still. Every effort was made to have him tell what part of the cab struck him. He said frankly he did not know. There were no dents or marks on the front of the cab. The only damage was to the mirror on the outside of the cab which was knocked loose. Contrary to the plaintiff's evidence, the cab driver, called as an adverse witness, stated positively and without contradiction that he was proceeding west-

wardly along the avenue at a speed of from 15 to 20 miles per hour, straddling the line dividing the westbound lanes, when plaintiff walked into the side of the cab.

Conceding negligence on the part of the cab driver, it is clear that the plaintiff was guilty of contributory negligence as a matter of law. He did not exercise due care for his own safety. According to his own testimony he made no effort to avoid being struck by the approaching taxicab which he says he saw 40 or 50 feet distant. It was much easier for this pedestrian to see the lighted cab approaching than it was for the driver to see the plaintiff, dressed in dark clothing on this dark, rainy night.

As said by Mr. Justice Buchanan in *Hopson* v. *Goolsby*, 196 Va. 832, 838, 839, 86 S. E. 2d 149, 153:

"In view of the mounting volume of traffic we think the center of a city or town street is not to be considered as a 'comparative zone of safety' as characterized in the *Thornton* case. [*Thornton* v. *Downes*, 177 Va. 451, 14 S. E. 2d 345 (1941)]. It did not prove so for the pedestrian in that case who was killed at that point in the street. The pedestrian must use reasonable care to look when he steps into the street and as he continues across. * * *

"The duty of the present plaintiff to look did not cease but became more insistent when she came to the middle of the street and was stepping into the travel lane of cars coming from her right. She did not perform that duty. Admittedly she violated that duty, and necessarily she was guilty of contributory negligence.

\* \* \* \* \* \* \*

"If looking discloses approaching traffic, then the right to proceed is to be tested by whether a person of ordinary prudence would attempt it. *Rhoades* v. *Meadows*, 189 Va. 558, 562, 54 S. E. 2d 123, 125. But if a person having a duty to look 'carelessly undertakes to cross without looking, or, if looking, fails to see or heed traffic that is obvious and in dangerous proximity and continues on into its path, he is guilty of negligence as a matter of law.' *Hooker* v. *Hancock, supra,* 188 Va., at p. 356, 49 S. E. 2d, at p. 716; *Bryan* v. *Fewell,* 191 Va. 647, 653, 62 S. E. 2d 39, 42; *Manhattan &c. Corp.* v. *Williams, supra,* 191 Va., at pp. 492-3, 62 S. E. 2d, at p. 12." See also *Hodgson* v. *McCall,* 197 Va. 52, 87 S. E. 2d 791; *Cook* v. *Shoulder,* 200 Va. 281, 105 S. E. 2d 860.

As above pointed out, the giving of Instruction P-1 on behalf

of the plaintiff was error, but it would serve no good purpose to remand the case for a new trial on account of this, for, considering the evidence in the light most favorable to the plaintiff, he was guilty of contributory negligence as a matter of law. The judgment of the trial court so holding is entitled to great weight, and this is especially true where the order of the court sets aside the verdict in contrast to approving it. A verdict which has been disapproved by the trial judge is not entitled to the same weight on appeal as one that has been approved by him. The very fact that he is given this power over verdicts shows that to some extent at least he is entitled to pass upon the weight of the evidence. 1 Mich. Jur., Appeal and Error, § 272, pages 695, 696.

The trial court properly set aside the verdict and entered judgment for the defendants.

The judgment is therefore

*Affirmed.*

EGGLESTON, C. J., and BUCHANAN, J., dissenting.

BUCHANAN, J., dissenting:

I disagree with the conclusion of the majority that the plaintiff was guilty of contributory negligence as a matter of law. The jury found that as a matter of fact he was not, and under the evidence they had a right so to decide.

Only two people witnessed the accident. One was the plaintiff and the other was the taxi driver. The plaintiff's evidence was that he walked westward on the sidewalk along the south side of City Hall avenue until he came to Metcalf Lane, where he turned to his right to cross City Hall avenue, a four-lane street. At that point he saw no car coming from either direction so he walked straight across to the middle of the street. Then he saw a car (the taxicab) coming from his right 40 to 50 feet away. Thereupon he stopped and was standing still just about one foot over the double lines that divided the west bound lanes from the eastbound lanes of City Hall avenue. While he was standing still in that position the taxicab "crossed in front of me and knocked me down and that is how I got hurt, my head and leg."

That is the way he said it happened; that is evidently the way

the jury found it did happen; and there is nothing in the record to brand that version of the accident as incredible. There were no vehicles in front of the taxi driver or behind him, so he testified. Both of the westbound lanes were open to him, less the one foot at the double lines where the plaintiff was standing. The law required him to drive in his right-hand lane, Code § 46-222 (1958 Replacement Vol. 7, § 46.1-206). Had he obeyed the law, as the plaintiff had a right to expect, he would not have hit the plaintiff. He admitted he was "straddling" the line between the two westbound lanes as he approached and that he did not sound his horn to give warning. The plaintiff's evidence was that he came clear across both lanes and struck him as he stood not more than 12 inches over the double lines in the middle of the street.

I cannot agree that on this rainy, foggy night this 77 year old pedestrian was guilty of contributory negligence as a matter of law in not dodging this taxicab as it came across from the lane where it ought to have been, and struck him as he stood in a place where he had a right to believe he was in no danger from it.

A few years ago this court characterized the middle of the street as a "comparative zone of safety." *Thornton* v. *Downes,* 177 Va. 451, 14 S. E. 2d 345. In that case Moss was "standing in or near the center of the street" when Thornton, driving his car westward "with a street clearance of at least twenty-one feet from the point where Moss was standing," struck Moss and killed him. The verdict and judgment were for the plaintiff and we held there was no merit in the contention that Moss was guilty of contributory negligence as a matter of law. It was said in that case, quoting from *Moore* v. *Scott,* 160 Va. 610, 621, 169 S. E. 902, 906, that the question of whether the pedestrian in such circumstances was guilty of contributory negligence " 'is almost invariably one for the jury.' " 177 Va. at 457, 14 S. E. 2d at 348.

In the later case of *Hopson* v. *Goolsby,* 196 Va. 832, 86 S. E. 2d 149, quoted from in the present majority opinion, in which the pedestrian was held guilty of negligence because she walked into the path of an approaching car without looking, we said that in view of the mounting volume of traffic the center of the street should not be considered a comparative zone of safety but the pedestrian "must use reasonable care to look when he steps into the street and as he continues across." 196 Va. at 838, 86 S. E. 2d at 153.

That is exactly what the plaintiff here said he did. He looked

before he started across and saw no car coming. He looked again when he reached the center of the street, saw the taxicab coming and he stopped. There was then almost all of two traffic lanes available to the taxicab for passing him. But now the court has come full circle and is holding that a person who crosses at an intersection, where the statute says he shall cross, and reaches the middle of the street safely and there stops to let an approaching car pass him, is guilty of negligence as a matter of law if he fails to get out of the way of a driver who comes across an intervening lane and hits him. It seems to me a harsh rule to lay down even for the agile, to say nothing of the aged.

I agree that the plaintiff did not have the right of way because § 46-243, which required him to cross only at an intersection, did not give him the right of way, since the taxicab was not a vehicle making a turn into the street; and this was not the sort of intersection in which § 46-244 gave the plaintiff the right of way. Hence, Instruction P-1 should not have been given. But this plaintiff was not asserting any right of way. He conceded the right of way to the taxicab and stopped to let it pass. I think the case should be reversed and a new trial granted because of that instruction; but to say that the plaintiff is barred from recovery for his injuries on the theory that all reasonable men must agree that he was guilty of contributory negligence is not, in my opinion, the right conclusion under the facts of this case.

"While a verdict disapproved by the trial court is not entitled to the same weight as a verdict approved by it, if the record contains credible testimony to support the finding of a jury, such finding cannot be disturbed either by the trial court or by this court. The applicable rule has been stated and restated many times." *Atlantic Greyhound Corp.* v. *Shelton,* 184 Va. 684, 692, 36 S.E. 2d 625, 628.

MR. CHIEF JUSTICE EGGLESTON joins in this dissent.