SHELTON L. COFIELD

V.

CHARLES A. NUCKLES, JR.

Record No. 881265

HORACE A. HURDLE

V.

CHARLES A. NUCKLES, JR.

Record No. 881290

January 12, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Lacy, JJ., and
Cochran, Retired Justice

*Donnell P. Davis (Furniss, Davis, Rashkind & Saunders*, on brief), for appellant. (Record No. 881265)

*Robert E. Gillette* for appellee. (Record No. 881265)

*Benjamin P. Lynch, Jr. (Harris, Fears, Davis, Lynch & Mc-Daniel*, on briefs), for appellant. (Record No. 881290)

*Robert E. Gillette* for appellee. (Record No. 881290)

JUSTICE LACY delivered the opinion of the Court.

The accident which gave rise to this cause of action occurred December 7, 1984, on Warwick Boulevard in Newport News, during rush-hour traffic. Warwick is a four-lane, east-west, one-way street. The northernmost lane, or curb lane, is delineated by a solid white line while the other three lanes are separated by broken lines. Charles A. Nuckles, Jr. and a co-worker were walking eastbound on the sidewalk along the south side of Warwick. To meet their ride home from work, they had to cross the street.

When Nuckles reached the intersection of Warwick and 47th Street, stopped vehicles blocked the pedestrian crosswalk across Warwick in all three travel lanes. Nuckles began to cross Warwick behind the second vehicle stopped in each of the lanes. He successfully crossed the first two lanes but his path was blocked in the third lane. Nuckles found an opening in front of the fourth vehicle in the third lane, a van driven by Horace A. Hurdle.

Nuckles stopped in front of the Hurdle van. Hurdle gave Nuckles three waving hand signals, and Nuckles proceeded to cross in front of the van. As he stepped beyond the van, he was struck by another van traveling west in the curb lane. The second van was driven by Shelton L. Cofield.

Nuckles brought this suit against Hurdle and Cofield to recover damages for injuries sustained as a result of the accident. At the conclusion of all the evidence, the trial court, holding that the curb lane was not a travel lane, instructed the jury that Cofield was negligent as a matter of law. The jury returned a verdict of $175,000 against both Cofield and Hurdle, upon which the trial court entered judgment.

On appeal, Cofield and Hurdle assign error to a number of the trial court's rulings. We will consider each assignment as it pertains to the actions of each party. We view the facts in the light most favorable to the prevailing party, Nuckles.

## I. Nuckles

Cofield and Hurdle maintain that the trial court erred by refusing to hold that Nuckles was negligent as a matter of law because he violated statutory provisions relating to pedestrians. Specifically, Cofield and Hurdle cite former Code § 46.1-230(a) (1986 Repl. Vol.)[1] which states in pertinent part:

> When crossing highways or streets, pedestrians shall not carelessly or maliciously interfere with the orderly passage of vehicles. They shall cross wherever possible only at intersections or marked crosswalks.

Under this statute, they argue Nuckles' failure to use the marked intersection constitutes negligence per se. Furthermore, Cofield asserts that Nuckles crossed the street in a manner which "carelessly or maliciously interfered with the orderly passage of vehicles," and violated the portion of former § 46.1-231(b) (1986 Repl. Vol.)[2] which prohibited a pedestrian from entering or crossing "an intersection in disregard of approaching traffic."

■ The evidence showed that bumper-to-bumper traffic on Warwick Boulevard was stopped and that it blocked the intersection Nuckles wished to use. He did not step into moving traffic when he began to cross the street. Even after Nuckles received the hand signals from Hurdle, he slowed his gait and attempted to look for approaching traffic while he stepped into the curb lane. This evidence presented a proper jury question regarding whether it was possible for Nuckles to cross at the intersection and whether his action disregarded traffic or carelessly or maliciously interfered with it.

■ Cofield also asserts that Nuckles violated former Code § 46.1-232 (1986 Repl. Vol.)[3] which states:

[1] Former Code § 46.1-230(a) has been recodified in Code § 46.2-923.
[2] Former Code § 46.1-231(b) has been recodified in Code § 46.2-924.
[3] Former Code § 46.1-232 has been recodified in Code § 46.2-926.

Pedestrians shall not step into that portion of a highway or street open to moving vehicular traffic at any point between intersections where their presence would be obscured from the vision of drivers of approaching vehicles by a vehicle or other obstruction at the curb or side, except to board a passenger bus or to enter a safety zone, in which event they shall cross the highway or street only at right angles.

This section applied to a pedestrian who stepped from an obscured position at the curb or side of the road into moving traffic. It is inapplicable here, where Nuckles initially stepped from a position where he could be seen by oncoming vehicles into stationary traffic stopped at a red light.

■ Based on the evidence presented, the trial court correctly refused to find Nuckles negligent as a matter of law for violation of former §§ 46.1-230, 46.1-231(b), or 46.1-232, and correctly declined to grant Instruction 22A.[4]

Cofield also contends that Nuckles was negligent as a matter of law for failure to keep a proper lookout. Cofield points to the principle that if a pedestrian crosses a busy street "without looking, or, if looking, fails to see or heed traffic that is obvious and in dangerous proximity and continues on into its path, he is guilty of negligence as a matter of law." *Hooker* v. *Hancock*, 188 Va. 345, 356, 49 S.E.2d 711, 716 (1948). *See also Bryan* v. *Fewell*, 191 Va. 647, 62 S.E.2d 39 (1950).

■ Nuckles' testimony indicated that he was aware of the location and movement of the traffic prior to and while he crossed the street. When he crossed in front of Hurdle's van he "slowed down to a slow gate [sic] . . . to look to my right but I never got to look." Three other witnesses testified that Nuckles attempted to look for traffic approaching in the curb lane. Based on this evidence, whether Nuckles failed to keep a proper lookout, and whether Nuckles saw Cofield's van approaching or was in a position to do so yet proceeded into its path, were issues for the jury.

---

[4]                              INSTRUCTION 22A
The Court instructs the jury that [t]he plaintiff, C.A. Nuckles, was negligent in failing to cross Warwick Blvd. within the designated crosswalk at the intersection of 47th St. and Warwick Blvd. and in failing to cross Warwick Blvd. at a right angle. The Court further instructs the jury that if you find from a preponderance of the evidence that such negligence proximately contributed to cause the accident then you shall find your verdict in favor of the defendants Hurdle and Cofield.

■ Hurdle and Cofield complain that, if Nuckles' negligence was a jury issue, the trial court erred when it struck the second sentence of Instruction 18A. As proposed, that instruction read in its entirety:

A pedestrian crossing a highway is required to exercise such care as an ordinarily prudent person would exercise under the existing circumstances. If under such circumstances he undertakes to cross without looking, or if looking, fails to see or heed traffic that is obvious and in dangerous proximity, and continues on in its path, then he is negligent.

This instruction is based on *Hooker, supra,* and is not inappropriate; however, a court is not required to give instructions that are repetitious. *See Cook v. Basnight,* 207 Va. 491, 497, 151 S.E.2d 408, 412 (1966); *Norfolk & W. R. Co.* v. *Birchfield,* 105 Va. 809, 814-15, 54 S.E. 879, 881 (1906). The instructions, taken as a whole, sufficiently instructed the jury on the duty to keep a proper lookout. *See, e.g.,* Instruction 20.[5]

■ Finally, Cofield contends that Nuckles "assumed the risk" by the manner in which he crossed Warwick Boulevard and that the trial court erred in refusing to submit this issue to the jury. The "essence" of assumption of risk is venturousness. *Arrington, Adm'r* v. *Graham, Adm'r,* 203 Va. 310, 314, 124 S.E.2d 199, 202 (1962). Here, the record is devoid of any indication that Nuckles was aware of the approach or danger of Cofield's van proceeding in the curb lane, yet proceeded to venture out in front of the van. Jury instructions must be supported by at least some evidence. *Van Buren* v. *Simmons,* 235 Va. 46, 51, 365 S.E.2d 746, 749 (1988). The trial court appropriately refused Instruction 17A, a jury instruction which was unsupported by the evidence.

---

[5]  INSTRUCTION NO. 20
A pedestrian has a duty to use ordinary care when he is crossing the traveled portion of a highway:
(1) to keep a lookout for motor vehicles;
(2) to refrain from entering or crossing the traveled portion of a highway in disregard of traffic approaching in such a manner that a reasonable person would not attempt to cross; and
(3) to step from his course into a place of safety if it reasonably appears to him that he is in danger of being struck by a motor vehicle.
If a pedestrian fails to perform any one or more of these duties, then he is negligent.

## II.  Hurdle

Hurdle argues that the trial court should have granted his motion to strike Nuckles' evidence as to him and entered summary judgment in Hurdle's favor because the evidence did not establish any "act on the part of appellant, Hurdle, which would constitute negligence upon which recovery could be founded." We agree.

■ A driver's courteous, helpful gesture indicating that he will remain in place and allow another motorist or pedestrian to proceed may be limited to indicating safe passage solely with regard to the driver's vehicle. At other times, such a signal may indicate safe passage beyond the driver's vehicle. A driver is under no duty to do either. We considered this issue as a matter of first impression in *Nolde Bros.* v. *Wray*, 221 Va. 25, 266 S.E.2d 882 (1980). There we cited with approval Justice Cardozo's maxim that "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Id.* at 28, 266 S.E.2d at 884 (quoting *Glanzer* v. *Shepard*, 233 N.Y. 236, 239, 135 N.E. 275, 276 (1922)). To determine whether Hurdle's signal constituted negligence here, we must look to the facts of this case.

The evidence, taken in the light most favorable to Nuckles, was that Hurdle stopped his van to let Nuckles and his companion cross in front of him. Hurdle's van was equipped with side mirrors. Nuckles and others testified that Hurdle appeared to look into the right side mirror, then looked back at Nuckles and waved him across. Neither Hurdle nor Nuckles expected a vehicle to be traveling in the curb lane. In the process of passing Hurdle's van, Nuckles turned his head to the right to check the curb lane. Cofield's van approached from the rear on the right in the curb lane, traveling 40 to 45 miles per hour and struck Nuckles.

■ On this record we cannot say, as we did in *Nolde*, that the driver was not in a position to ascertain the safety of proceeding. Here, however, the plaintiff has introduced no evidence supporting the proposition that Hurdle breached a duty of ordinary care.

The fact that Cofield's van struck Nuckles in the adjacent lane as Nuckles emerged from in front of Hurdle's van, without more, does not indicate any negligence by Hurdle. Checking the mirror before delivering a signal is consistent with exercising a duty of ordinary care for the safety of others. A period of time elapsed between Hurdle's move to check the mirror, turning back to Nuckles, waving Nuckles on, Nuckles' crossing in front of the

van, and the impact. The evidence does not reflect whether the Cofield van, traveling at 40 to 45 miles per hour, was in Hurdle's range of vision when he looked at his side mirror, if he saw it, or if he should have seen it. There is no evidence that Hurdle negligently ignored an approaching danger in signalling to Nuckles.

Jury issues may exist regarding what Hurdle intended to communicate by his signal, and whether it was reasonable for Nuckles to rely on the signal as an indication that there was safe passage across both Hurdle's lane and the adjacent lane. Those issues are not reached in considering the question of *Hurdle's* liability, however, unless there is some evidence of a negligent act by Hurdle.

For the reasons set out above, we conclude that the trial court erred when it refused to grant Hurdle's motion to strike the evidence against him and enter summary judgment in his favor.[6]

### III.   Cofield

The trial court ruled that Cofield was negligent as a matter of law because "his operation of his motor vehicle in the parking lane at the time of the accident was in violation of the ordinances of the City of Newport News, and § 46.1-210."[7]

The evidence shows that Cofield was traveling between 40 and 45 miles per hour at approximately 4:10 p.m. in the northernmost lane of the four lane, one-way street. Cofield's travel lane was designated by a solid white line and referred to as the "curb" lane, "parking lane" or "pick up lane." The city of Newport News had erected signs reading "NO PARKING" "STOPPING" "STANDING" "3PM - 5PM" "WEEKDAYS" along the north side of the street in the vicinity of the accident, from 46th to 47th streets.

The city ordinances contained in the record, and, we assume, to which the trial court referred in its order, are Newport News, Va., Code §§ 26-9 and 26-107 (1978), and Newport News, Va., Ordinance 3109-83 (December 12, 1983). All three of these sections deal with the authority of the department of engineering and the traffic engineer to regulate the operation and parking of vehicles in the city through placement of traffic control signs. None of

---

[6] Alternatively, Hurdle argued that if his actions presented a proper jury issue, the jury instruction on the issue, Instruction 12, improperly allowed the jury to "find negligence based upon giving the signal rather than in failing to make the proper determinations before giving the signal." Consideration of this issue is unnecessary in light of our holding.

[7] Former Code § 46.1-210 has been recodified in Code § 46.2-841.

these sections indicates whether the signs on Warwick Boulevard, or any other city action or policy, permitted or prohibited vehicular travel in the northernmost lane between 3:00 p.m. and 5:00 p.m.

Virginia Code § 46.1-210 lists the conditions under which a vehicle could overtake and pass on the right of another vehicle. Subsection (a)(3) allows passing on the right on "a one-way street where the roadway is free from obstructions and of sufficient width for two or more lines of moving vehicles." Subsection (b) allows passing on the right only under conditions permitting safe passing and prohibits passing on the right off the pavement or "main traveled portion of the roadway."

We cannot hold that, as a matter of law, Cofield violated city regulations or state statutory requirements. No testimony to explain the interpretation of the signs or the policies of the city regarding the use of Warwick Boulevard's curb lane between 3:00 p.m. and 5:00 p.m. was allowed. The signs themselves did not prohibit vehicular traffic from traveling in that lane at the time of the accident. Cofield's belief that he was "not supposed to be" driving in the curb lane at the time of the accident does not make such action illegal. A party can concede the facts but cannot concede the law. *See Stancil* v. *United States*, 200 F.Supp. 36, 43 (E.D.Va. 1961); *see also Tuggle* v. *Commonwealth*, 230 Va. 99, 111 n.5, 334 S.E.2d 838, 846 n.5 (1985) (citing *Orloff* v. *Willoughby*, 345 U.S. 83, 87, *reh'g denied*, 345 U.S. 931 (1953)).

For the above reasons, we hold that the trial court erred in holding that Cofield was negligent as a matter of law.

We will affirm in part and reverse in part. Final judgment will be entered here in No. 881290. No. 881265 will be remanded for further proceedings consistent with this opinion.

Record No. 881265    *Affirmed in part, reversed in part, and remanded.*

Record No. 881290    *Affirmed in part, reversed in part, and final judgment.*

JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO and JUSTICE RUSSELL join, dissenting.

In my opinion, the plaintiff was guilty of contributory negligence as a matter of law for at least two reasons.

In the first place, the applicable statute provided that pedestrians "shall cross *wherever possible only* at intersections or marked crosswalks. Where any intersections of . . . streets contain no marked crosswalks pedestrians shall not be guilty of negligence as a matter of law for crossing at any such intersection or between intersections when crossing by the most direct route." Former Code § 46.1-230(a) (1986 Repl. Vol.) (now § 46.2-923) (emphasis added).

In the present case, a marked crosswalk was available for the plaintiff's use in crossing Warwick Boulevard. According to the statutory mandate, the plaintiff was required to proceed "only" within the crosswalk because it was "possible" for him to use the marked space for crossing the street. The mere fact that vehicles were temporarily blocking the crosswalk did not make it not "possible" to use the crosswalk, or give the plaintiff license to proceed outside the crosswalk and to venture through the maze of stop-and-go traffic. He had only to wait briefly for the crosswalk to clear. Instead, the plaintiff left a place of safety and impatiently attempted to cross the street in violation of law.

As this Court held in a case involving similar facts, where there was no marked crosswalk, just an unmarked intersection, "Pedestrians where possible are supposed to cross at an intersection. . . . The plaintiff in this case, although an intersection was available on either side, chose the course of crossing in the middle of the block, and in doing so . . . was guilty of negligence and that negligence . . . continued right up to the time of the accident." *Hodgson* v. *McCall*, 197 Va. 52, 54, 87 S.E.2d 791, 793 (1955).

In the second place, even if somehow the plaintiff was free of negligence in crossing outside the marked crosswalk, nevertheless he was guilty of contributory negligence as a matter of law for failing to keep a proper lookout as he walked in front of and past Hurdle's van into the path of Cofield's vehicle. When a pedestrian undertakes to cross a street between intersections, he is required to exercise a greater degree of vigilance than is required when crossing at an intersection. *Hopson* v. *Goolsby*, 196 Va. 832, 838, 86 S.E.2d 149, 152-53 (1955).

Here, the plaintiff testified that he was walking "at a fast gait" when he moved across in front of the stopped van; that he "slowed down to a slow gait" as he reached the right side of the van; and,

that he was "hit" by Cofield's vehicle without seeing "anything" as he "was in a stepping position" and "turning to look." Manifestly, the plaintiff did not stop, or even pause, to look before stepping directly into the path of Cofield's moving vehicle. That vehicle would have been in plaintiff's plain view had he exercised a reasonable lookout. Being on foot, the plaintiff could have stopped instantly had he looked and seen the approaching vehicle, and the accident would not have occurred. A glance to his right would have warned the plaintiff of the danger of proceeding. There was nothing to keep him from looking, and there was every reason why he should look before he moved from his position of safety at the right front corner of the van. *Id.* at 838-39, 86 S.E.2d at 153. Indeed, the plaintiff testified that he "wasn't standing at the corner peeking around the corner" to see oncoming traffic in the curb lane.

For these reasons, I would hold that the plaintiff is barred from recovery and would not reach the other issues presented in the appeal. Thus, I would reverse the judgment of the trial court and enter final judgment for the defendants.