## 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓

Paul Petcosky v. Donald C. Bowman and Samuel Roy Dodson.
Samuel Roy Dodson v. Donald C. Bowman and Paul Petcosky.

September 14, 1955.

Record Nos. 4376, 4377.

Present, All the Justices.

The opinion states the case.

*Bowles, Anderson & Boyd* and *Seymour J. Spelman,* for plaintiff in error, Petcosky.

*J. Segar Gravatt; W. P. Bagwell, Jr.; Shewmake, Gary, Goddin & Blackwell* and *Goolrick, Ashby & Whitticar,* for defendants in error, Bowman and Dodson.

*Moncure and Cabell,* for plaintiff in error, Dodson.

*Bowles, Anderson & Boyd; Seymour J. Spelman; J. Segar Gravatt; W. P. Bagwell, Jr.; Shewmake, Gary, Goddin & Blackwell* and *Goolrick, Ashby & Whitticar,* for defendants in error, Bowman and Petcosky.

EGGLESTON, J., delivered the opinion of the court.

This litigation arises out of two collisions involving five motor vehicles which occurred on U. S. Highway No. 1, just south of Stafford Courthouse, about 9:00 o'clock p. m. on Friday, August 31, 1951. For a distance of one-fourth of a mile north and about one-half mile south of the scene the highway had been recently resurfaced for a width of forty feet. The usual white lines indicating the lanes of traffic had not been painted on the surface. The road was dry and traffic thereon was quite heavy.

Shortly before the collisions four vehicles were proceeding in a

single line southwardly toward the crest of a hill. At the head of the line was a trailer-truck owned by C. W. Marsh and driven by his employee, James Hodges. Immediately behind the truck was a passenger car driven by Donald W. Todd. Next in line was a passenger car driven by Samuel Roy Dodson, and last in line was a taxicab driven by Donald C. Bowman. A passenger car driven by Paul Petcosky and owned by Richard I. Richmond was being driven northwardly, approaching the crest of the hill and the scene of the accident.

As the truck, which was driven in the extreme western southbound lane, approached the crest of the hill the car driven by Todd overtook and safely passed it on the left. The driver of the Dodson car, next in line, then undertook to pass the truck in a similar manner. While undertaking this passing the left rear fender of the southbound Dodson car was struck by the left front of the northbound Petcosky car. As the result of this collision the Petcosky car veered to its left, crossed the center of the road, and collided head-on with the taxicab driven by Bowman. The Bowman and Petcosky cars were demolished in the collision and came to rest north of the crest of the hill, with their front ends in the passing or easternmost southbound lane. Both Bowman and Petcosky received severe injuries.

To recover damages for his injuries, Bowman filed a motion for judgment against Petcosky and against Richmond, the owner of the car driven by Petcosky; Hodges and Marsh, the driver and owner, respectively, of the truck; and Dodson, the driver of the Dodson car. Petcosky filed a cross-claim against Dodson seeking to recover damages for his (Petcosky's) injuries.

After the evidence had been heard by a jury the trial court struck the evidence as to Richmond, Hodges and Marsh, submitting to the jury to decide, (1) whether Bowman was entitled to recover of Petcosky or Dodson or both, and (2) whether Petcosky was entitled to recover of Dodson on the cross-claim. The jury brought in a verdict of $15,000 in favor of Bowman against both Petcosky and Dodson, and a verdict against Petcosky on his cross-claim against Dodson. Motions to set aside the verdicts were overruled and judgment was entered thereon. On a single record we granted separate writs of error to both defendants, Petcosky and Dodson. The parties will be referred to as they appeared in the lower court.

There is no assignment of error to the action of the trial court in

striking the evidence as to Richmond, the owner of the car which was being driven by Petcosky, and against March and Hodges, the owner and driver, respectively, of the truck.

On the merits, the main contention of the defendants, Petcosky and Dodson, is that the trial court erred in its rulings on the instructions and motion for a new trial in holding that the evidence was sufficient to sustain a finding that they were guilty of concurrent negligence which proximately caused the injuries of the plaintiff, Bowman. These defendants concede that the negligence which proximately caused the first collision between the Petcosky and Dodson cars also proximately caused the second collision between the Petcosky and Bowman cars. They further concede that the plaintiff, Bowman, was free of negligence and that under the evidence the jury might have found in his favor against either defendant. They insist, however, that there is no evidence that they were guilty of concurrent negligence and thus jointly liable to the plaintiff.

Because of the nature and severity of his injuries, Bowman had no recollection of the circumstances of the accident. His counsel called as adverse witnesses Petcosky, Dodson and Hodges, the drivers of the respective vehicles involved.

Petcosky, a service man on leave from Fort Bragg, North Carolina, testified that he approached the crest of the hill, going north, at about fifty miles per hour. Although he was not overtaking and passing any other vehicle proceeding in the same direction, he was driving in the center or passing northbound lane near to but to the east of the center line of the road. He saw the Todd car overtake and pass the truck and saw the Dodson car attempt to do likewise. He said the Dodson car made a wide arc around the truck in passing it and came across the center line of the road into his (Petcosky's lane. He (Petcosky) attempted to turn his wheel to the right in an effort to avoid a collision but did not have sufficient time to do so, and the left front of his car struck the left rear fender of the Dodson car. This collision threw the Petcosky car "out of control" and caused it to veer to the left, cross the center line of the road, and collide head-on with the southbound Bowman taxicab which was proceeding in its proper lane.

Petcosky further testified that the four passengers in his car were asleep at the time and knew nothing of the circumstances. None of them testified.

Dodson testified that he had been following the Todd car at a speed of about forty-five miles per hour for several miles. After the Todd car overtook and passed the truck he (Dodson) undertook to do likewise. He proceeded alongside the truck in a straight line and when he was opposite the cab of the truck he saw the lights of the Petcosky car as it came over the crest of the hill headed for his car. The Petcosky car came over into his (Dodson's) lane and in the effort to avoid a collision with it he (Dodson) cut sharply to his right and passed "very close" in front of the truck. As he did so the left front of the Petcosky car sideswiped the left rear fender of his (Dodson's) car. Despite this collision Dodson brought his car to a stop ahead of the truck. He insisted that at no time did his car pass to the left of the center line of the road. The testimony of two passengers in the Dodson car corroborated his testimony.

Todd testified that as he was passing the truck the Petcosky car came near colliding with his (Todd's) car, missing it only about one foot. The Todd car came to a stop ahead of the Dodson car.

Hodges, the driver of the trailer-truck, testified that his vehicle carrying a load of lime in paper bags was proceeding southwardly in its extreme right-hand lane at a speed of about thirty-five miles per hour. As he was going over the crest of the hill the Dodson car came abreast of the left side of the cab of the truck, attempting to pass it. He said that the Dodson car was "swaying" or "zigzagging" as it passed the cab of the truck, but that it cleared the truck and stopped about seventy-five feet ahead of it. According to Hodges, the collision between the Petcosky and Dodson cars did not take place alongside or in front of his cab. Indeed, he said, he did not see the collision or hear the crash. After bringing his truck to a stop Hodges found that one of the other vehicles had struck the rear of the trailer and torn some of the bags, causing the lime contents to spill onto the pavement.

Clinton R. Swann, a State trooper, who appeared on the scene shortly after the accident, testified that there were no skid marks on the pavement. or other marks which indicated where the collision between the Petcosky and Dodson cars had occurred. He described the location of the badly damaged Petcosky and Bowman cars, as has been stated, in the inside southbound traffic lane. The trooper further testified that while the pavement had been laid in four ten-foot sections which upon close inspection would disclose

seams or dividing lines of the lanes, such dividing lines were not discernible at night by the driver of a motor vehicle.

The argument of the defendants, Petcosky and Dodson, that there is no evidence to sustain a finding that they were guilty of concurrent negligence runs thus: The evidence in favor of Petcosky is that he was always on his proper side of the center line of the highway and that the Dodson car crossed the center line and caused the first collision; on the other hand, the evidence in favor of Dodson is that he was always on his proper side of the road and that the Petcosky car crossed the center line and caused the collision; since both vehicles could not have been operated on the wrong side of the center line at the same time, there is no evidence of concurrent negligence on the part of the two drivers. Hence, they say, the jury's verdict should not stand because it has simply failed to fix the cause of the first collision which brought about the second.

The weakness in this argument is that under the evidence the negligence of the defendants did not necessarily consist in the single fact that one or the other was driving to the left of the center of the highway. The jury may well have found from the evidence that both were negligent in that they were driving too close to the line under the conditions then existing. Moreover, the jury may have found that the two defendants were guilty of concurrent negligence in other respects, as hereinafter pointed out, which proximately caused the two collisions.

The undisputed evidence is that at the time of the collisions the traffic was quite heavy. The absence of markings on the highway as the respective vehicles approached the crest of the hill should have been a warning of increased danger. Petcosky testified that as he approached the scene he was driving "near the center of the highway." He admitted that he was then not overtaking and passing any other vehicle proceeding in the same direction and that his right-hand northbound driving lane was clear of traffic. He did not claim that he was familiar with the road, but said he located the center of the highway by noting the difference in the level of the sections in which the pavement had been laid. But Trooper Swann testified that such differences was not discernible to the driver of a car at night. At any rate, Petcosky continued on his way near to and along what he thought was the center line of the highway,

although he saw the on-coming Todd car and then the Dodson car overtaking and passing the trailer-truck.

The jury may well have concluded that Petcosky had misjudged the location of the center line and was negligent in driving on or too close to the line, without keeping a proper lookout for the Dodson car and in not sooner turning to the right and avoiding the collision.

The defendant, Dodson, faced with the same physical situation and knowing of the absence of markings showing the proper lanes for travel, deliberately pulled his vehicle from a place of safety behind the Hodges truck and attempted to pass it near the crest of the hill. The truck was seven and one-half feet wide and was being driven two or three feet from the right-hand edge of the highway. Thus the left-hand side of the truck was approximately ten feet from the right-hand edge of the road. If Dodson was correct in saying that he cleared the truck by at least two feet, this would have placed the left side of his car, which was about six feet wide, within two feet of the center line. An error of a few inches in his calculation would have put Dodson's vehicle on or even across the center line. Hodges, the truck driver, said the Dodson car was "swaying" or "zigzagging" as it passed the truck. In any event, Dodson deliberately drove his vehicle close to what he thought was the unmarked center of the road, approaching the crest of a hill. He should have known that in heavy traffic there might be an on-coming car likewise driven close to the unmarked center of the road. Under such circumstances we are of opinion that the jury were well warranted in finding that Dodson was guilty of negligence in attempting to pass the truck without first exercising ordinary care to see that he could do so with reasonable safety, in attempting to pass the truck while approaching the crest of a hill, in driving on or too close to the center line of the highway, and in not keeping a proper lookout for the on-coming Petcosky car.

Thus there is ample evidence to support the finding that the first collision which brought about the second and caused the plaintiff's injuries was proximately due to the concurrent negligence of the two defendants, Petcosky and Dodson. See *Via* v. *Badanes*, 189 Va. 44, 52 S. E. (2d) 174; *Smith* v. *Turner*, 178 Va. 172, 16 S. E. (2d) 370, 136 A. L. R. 1251.

The defendant, Dodson, complains of the action of the trial

court in instructing the jury that Dodson was under the duty, among others, "not to overtake or pass another vehicle proceeding in the same direction, upon or approaching the crest of a grade or upon approaching a curve in the highway, where the driver's view along the highway is obstructed."

This instruction was based upon Code, § 46-209, the pertinent portion of which at the time of the accident read:

"A person shall be guilty of reckless driving who shall:

\*     \*     \*     \*     \*     \*     \*

"(2) While driving a vehicle, overtake and pass another vehicle proceeding in the same direction, upon or approaching the crest of a grade or upon or approaching a curve in the highway, where the driver's view along the highway is obstructed".

Dodson's contention is that this section was intended to apply to a road designed to carry two or three lanes of traffic and not to one like that in the present case, which was designed to carry four lanes of traffic. The argument is that the purpose of the statute is to prohibit an overtaking vehicle from passing another on the left when the two vehicles are upon or approaching the crest of a grade or a curve on a two- or three-lane road where an on-coming vehicle obscured from view may also be occupying the same passing lane. This hazard, it is said, will not occur on a four-lane road because overtaking vehicles proceeding in the opposite direction are not required to use the same passing lane.

It is further argued that such legislative purpose was made clear by an amendment to the statute by Acts of 1952, ch. 671, p. 1120, which added the following language: "except where the overtaking vehicle is being operated on a highway having two or more designated lanes of roadway for each direction of travel or on a designated one-way street or highway."

One ready answer to this argument is that there is in the statute in effect at the time of the accident no language indicating that it was not intended to apply to a four-lane highway. Section 46-1(8) of the Motor Vehicle Code defines a "highway" as "Every way or place of whatever nature open to the use of the public for purposes of vehicular travel in this State, \* \* \*."

But even if we adopt the suggested view that the 1952 amendment was intended merely as a clarification of the meaning of the

existing statute, this does not support the contention that the statute did not apply to the highway along which these vehicles were operating at the time of the accident. It will be observed that the exception applies to a highway "having two or more designated lanes of roadway for each direction of travel." Here there were no such designated lanes. Consequently, in the absence of such markings there is no assurance of safety in overtaking and passing another vehicle, proceeding in the same direction, upon or approaching the crest of a grade where the driver's view along the highway is obstructed. Plainly we think the statute was intended to prevent just what occurred in this case, namely a collision between two meeting vehicles approaching each other on the crest of a hill and driving across or too close to the center line of the highway.

■ The defendant, Petcosky, assigns error to the action of the trial court in refusing to grant, at his request, a "Sudden Emergency Instruction." In substance this instruction would have told the jury that if they believed from the preponderance of the evidence that Petcosky, "without fault on his part," "was suddenly confronted with an emergency brought about by Dodson suddenly cutting out from behind the truck and driving his automobile across the center of the highway in the path of and dangerously close to the automobile operated by Petcosky," then Petcosky was not required, under such circumstances, to exercise "all the presence of mind and care of a reasonably prudent person under ordinary circumstances, but the law makes allowance for such emergency; and if you believe from the evidence that Petcosky acted in such emergency, if you believe such existed, as a reasonably prudent person might have acted under the same or similar circumstances," they should find a verdict for Petcosky on Bowman's claim against him and also on Petcosky's claim for damages against Dodson.

In our opinion the instruction was properly refused because Petcosky's own testimony shows that he was not "without fault" in bringing on the emergency with which he was confronted just befor the collision. He admitted that although he was not overtaking or passing another vehicle proceeding in the same direction and that his right-hand northbound lane was free of traffic, he deliberately drove at the rate of fifty miles per hour, at night, over the crest of this hill in what he thought was his inside passing lane, upon an unmarked portion of the highway. He gave no excuse for driving in the inside lane. "I was just driving there," he said. Moreover, he

admitted that he saw the on-coming truck, saw the Todd car pass the truck, and saw Dodson attempt to pass it. Yet he (Petcosky) made no effort to direct his car into its proper right-hand lane until the collision was imminent.

The case was submitted to the jury at 7:15 p. m. on the second day of the trial. After they had had the case under consideration for nearly two hours they announced that they could not reach an agreement and were adjourned until the next day. Upon the convening of court the next day the court addressed the jury thus:

"Ladies and gentlemen of the jury, I am sure you are going to have some trouble with this case due to the fact that we are trying two cases together instead of just one case. When you have just one issue to decide the juries and courts have very little trouble, but where you get a lot of issues in separate cases juries and courts always have a lot of trouble.

"Now I am going to give you this additional instruction to try and help you to arrive at verdicts in the cases. Now it does not mean that the other instructions which have been given you are not valid instructions, they are all valid instructions and are to be considered by you just as much as this instruction is to be considered. But this is to try and clarify the issues so that you can reach a verdict:

" 'The court instructs the jury that you are considering two separate and distinct cases. One is the Bowman case against Petcosky and Dodson. The second is the Petcosky case against Dodson. It has been shown by the evidence that there was no negligence on Bowman's part and he is entitled to recover against one or both of the defendants Petcosky and Dodson, depending on which one or whether both were guilty of negligence which proximately caused Bowman's injuries. One or the other or both of them are bound to have been guilty of negligence which injured Bowman, and you should find a verdict for Bowman against one or both of those defendants.'

"Now then consider the case of Bowman and Petcosky and Dodson separately from the case of Petcosky against Dodson, as you are required to bring in separate verdicts in each case. I do not undertake to tell you the order in which you shall consider the two cases, but you must consider them separately in order to untangle the mixed up threads that we have in the case, and arrive at a

verdict. Now you take this instruction with the other instructions and see if you cannot arrive at verdicts in these cases."

Counsel for both defendants objected to this instruction on the ground that while under the evidence the plaintiff, Bowman, was entitled to recover of one of the defendants, he was not entitled to recover of both. The lack of merit in that objection has already been dealt with.

Counsel for Petcosky objected to the instruction on the further ground that it did not contain a statement as to the burden of proof which rested upon the plaintiff. But it will be observed that the court in plain language told the jury that the granting of this supplemental instruction "does not mean that the other instructions which have been given you are not valid instructions, they are all valid instructions and are to be considered by you just as much as this instruction is to be considered. * * * Now you take this instruction with the other instructions and see if you cannot arrive at verdicts in these cases."

In a number of other instructions the court had fully and clearly instructed the jury upon the burden of proof. Hence, it was not necessary that a specific charge on the subject be repeated in the supplemental instruction.

■ Counsel complain of a number of incidents in which they say the conduct and remarks of the trial court were prejudicial to the interests of the two defendants. It is impossible to deal with all such matters in an opinion of reasonable length. Some are obviously trivial and require no discussion. We will deal briefly with those which we understand are mainly relied on.

As has been said, the issues before the jury were whether Bowman was entitled to recover of Petcosky or Dodson, or both, and whether Petcosky was entitled to recover of Dodson on his cross-claim. After the evidence had been concluded and the instructions settled, the court thus addressed the jury:

"Ladies and gentlemen of the jury, we have been here two days for this case and I am a great believer in keeping issues separate. This case is a sample of what happens when you get too many issues and two many lawyers involved in a case.

"At the beginning I want to tell you that I have struck the evidence against Richard I. Richmond and G. W. Marsh and James Hodges, and they are now out of the case. You all will bring in a

verdict for Richmond, Marsh and Hodges, there is no evidence that they had anything to do with the case.

"The only two defendants now left in the case are this boy Paul Petcosky and Dodson, who are the two that are now the defendants in the case. And unfortunately for the court and the jury in this case, Petcosky filed a cross-claim against Mr. Dodson, which he had a right to do under the law. The law ought not to give any such right as that, it ought to make them bring a single suit, they should keep the cases separate, but he had a right to do it, and therefore we had two issues in this case.

"You have first the action of Mr. Bowman against Mr. Dodson and Mr. Petcosky, and you have to decide that case.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"Then you will have to consider Mr. Petcosky's suit against Mr. Dodson and determine whether or not Mr. Petcosky has established any negligence against Mr. Dodson, or whether Mr. Dodson was free from fault under the instructions of the court."

Counsel for Petcosky excepted to this statement, and it is argued before us that the remarks of the court were prejudicial to that defendant, in that they were critical of his having filed a cross-claim in the proceeding.

After the court had briefly instructed the jury as to the forms of the verdicts which were proper, counsel for Petcosky said:

"Mr. Boyd: One other thing I would like to ask you to do, sir. I know you did not intend to suggest that Mr. Petcosky should not have filed his cross-claim in this action, but what you said at the beginning of the instruction, I am afraid that might have meant that to the jury. I wish you would straighten that out, sir.

"The Court: Mr. Petcosky had a perfect legal right to file his cross-claim in this case, he has a perfect right, but it added to the confusion of the issues, of course he has that right, of course.

"Mr. Boyd: I just didn't want them to misunderstand it, sir.

"The Court: All right, he has a perfect legal right to do it, he has a right to assert every legal right he has."

It is thus clear that the court made it plain to the jury that Petcosky had a "perfect legal right" to file his cross-claim in the case and that such explanation was satisfactory to and accepted by his counsel.

Counsel for both defendants next insist that after the jury had indicated that they were unable to agree on a verdict, the court improperly coerced them into an agreement by thus addressing them:

"The Court: Ladies and gentlemen of the jury, this case has been an expensive case, it has cost the litigants a lot of money—

"Mr. Moncure: If Your Honor please, I am bound to object to what a case costs as in any way influencing a jury or its verdict, I except to the court's statement.

"The Court: Now no juror must surrender his conscience, but as the Court of Appeals has said, the jury room is no place for pride of opinion, it is a place for jurors to get together if they can get together. And jury trials are generally expensive.

"Mr. Moncure: Exception.

"The Court: And juries are assembled to reach an agreement if it is possible to reach an agreement. Now I am going to adjourn you all over until 10 o'clock tomorrow morning, you be back here at 10 o'clock tomorrow morning."

On the following morning after giving the jury an additional instruction on the issues involved, the court thus addressed them:

"Now somebody has to decide this case, and if you cannot decide it we have to get another jury to decide it. And you are just as capable of deciding the case as another jury, and you have a responsibility in the matter that ought to be discharged. Now I do not undertake to tell you how you can discharge it except as written in those instructions but you go and discharge your duty."

It is well settled that when jurors have announced their inability to agree it is within the discretion of the trial court to urge on them an earnest effort to reach an agreement. In doing so, the court may point out the importance of their reaching an agreement and their duty to do so if they can without surrendering their individual consciences. *Smith* v. *Stanley*, 114 Va. 117, 131, 75 S. E. 742; 53 Am. Jur., Trial, § 957, p. 675; 89 C. J. S., Trial, § 481-b, p. 129 *ff*. While there is some conflict on the subject, the great weight of authority is that in urging the jury to agree the court may detail to them such matters as the expense of the trial, the time it has taken to try the case, the trouble and inconvenience involved, and the fact that in the event of a disagreement the case will have to be

decided by some jury on the same pleadings and in all probability on the same evidence. 53 Am. Jur., Trial, § 960, p. 676; Annotation: 109 A. L. R., p. 73; Annotation: 19 A. L. R. (2d), p. 1259.

We are of opinion that the charge complained of was not coercive and was well within the discretion of the trial court in an effort to have the jury agree on a verdict. In plain language the court told them that in reaching such agreement "no juror must surrender his conscience."

Next, it is said that the court in several instances improperly interrupted counsels' examination of witnesses to ask questions of the witnesses. In some instances the questions were obviously pertinent and clarifying in their nature and were therefore permissible. In others the questions propounded by the court were clearly irrelevant and upon objection were withdrawn. Some of the questions now complained of were not objected to and may not be considered on appeal. Rule 1:8. We have carefully examined each of the incidents properly before us and find in none of them any indication of the court's view as to the credibility of the particular witness or the effect of his testimony.

The brief filed on behalf of the defendant, Dodson, details a number of colloquies which took place between the court and his counsel in the presence of the jury, in which it is claimed that the court made remarks prejudicial to this defendant. In some instances the remarks of the court were obviously invited by counsel who insisted on arguing objections in the presence of the jury. But aside from this, we find in such incidents no indication of the court's bias or prejudice against this defendant.

While we find no reversible error in any of the incidents complained of, it should be noted that their number and the character of some of them would indicate that at times the trial of the case was not conducted with such dignity and decorum as are conducive to the proper administration of justice.

■ This final contention is urged on behalf of the defendant, Petcosky: After the jury had retired to consider upon its verdict counsel for Petcosky moved for a mistrial on the ground that they had just discovered that one of the members of the jury was a first cousin of James Ashby, Jr., Esq., one of counsel for the plaintiff, Bowman. The court overruled the motion at that time but it was again renewed as a ground for setting aside the verdict. In a written opinion the trial court adhered to its view that such

relationship of a juror to counsel was not a ground for disqualification and refused to set aside the verdict. Moreover, it held that, in any event, the objection came too late.

We agree with this holding. It is well settled that at common law a juror is not disqualified by the fact that he is related to one of the counsel in the case. 31 Am. Jur., Jury, § 140, p. 663; 50 C. J. S., Juries, § 219, p. 958; *Garland* v. *United States*, 4 Cir., 182 F. (2d) 801, 802. The only jurisdiction which holds to the contrary is the State of Georgia, where relationship to counsel whose fee is contingent upon success is ground for disqualification. See *Melson* v. *Dickson*, 63 Ga. 682, 36 Am. Rep. 128.

While in Virginia, under Code, § 8-199, the relationship of a juror to a "party" to a civil cause is ground for disqualification, there is no provision in this or any other statute for disqualification for relationship to counsel in the case. Hence, the common-law rule prevails in this jurisdiction. But even under the Georgia rule there would be no ground for disqualification in the present case, because the record shows that Ashby was not employed on a contingent fee basis.

Furthermore, under the express provisions of Code, § 8-201, "No exception to any juror on account of his age or other legal disability shall be allowed after he is sworn, unless by leave of the court." Thus, in any event, the objection to the qualification of this juror came too late.

We find no prejudical error in the proceeding and the judgment is

*Affirmed.*