# Richmond

## Marshall F. Ragsdale v. Lelia Jones.

November 28, 1960.

Record No. 5154.

Present, All the Justices.

The opinion states the case.

*Lewis H. Hall, Jr.,* for the plaintiff in error.

*Edward A. Marks, Jr. (Frank H. Pitchford; Alexander H. Sands, Jr.,* on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

On July 9, 1958, about 11:00 p. m., Lelia Jones was a passenger in a car which was being driven by her husband, Hubert E. Jones, eastwardly along Bridge road in the city of Newport News. When the car reached Warwick road Jones undertook to make a left turn and go north along the latter street. While in the act of making this turn the Jones car was struck on the right side by a car driven by Marshall F. Ragsdale westwardly along Bridge road through the intersection. Mrs. Jones was injured in the collision and has recovered a verdict and

judgment of $25,000 against Ragsdale who has appealed. For convenience the parties will be referred to as they appeared in the lower court.

The defendant has assigned twenty-nine alleged errors of the lower court. Some of these are trivial and merit no discussion. The assignments that the verdict is unsupported by the evidence and is excessive in amount are not argued and need not be considered. Suffice it to say, that there is ample evidence to support these findings by the jury. The main contentions of the defendant relate to the lower court's rulings on the instructions, the admission and rejection of certain evidence, and the alleged "misconduct on the part of the court in injecting itself into the case" and "developing testimony clearly available to the plaintiff."

The facts are these: Bridge road, along which the Jones car was proceeding prior to the attempted left turn, runs east from the James River bridge, intersects Warwick road at right angles, and proceeds across a bridge over the tracks of the Chesapeake & Ohio Railway Company. Proceeding eastwardly toward the intersection, Bridge road is divided by a grass plot or island with two lanes of travel in each direction. Proceeding westwardly and nearing the intersection, as the Ragsdale car was going, Bridge road is marked for three lanes of travel. The right-hand lane is designed for cars turning to the right and going north on Warwick road, the left-hand lane is for those turning left and going south on Warwick road, and the center lane is for those going through the intersection. The three lanes are marked by lines and appropriate directional arrows.

The evidence on behalf of the plaintiff, which has been accepted by the jury, is that as the Jones car proceeded eastwardly along Bridge road it was stopped at the Warwick road intersection for a traffic light. When the light turned green, Jones pulled into the intersection and attempted to make a left turn to go north on Warwick road. As has been said, when this turn had been nearly completed the Jones car was struck on the right side by the front of the Ragsdale car. Jones testified that before undertaking to make the turn he observed that there was no westbound car in the center lane of Bridge road indicating that it was going through the intersection; that suddenly the Ragsdale car "switched out of the left [turn] lane into the through lane" and struck his car. It was raining at the time of the collision.

Ragsdale testified that he approached the intersection at a speed of 25 to 30 miles an hour, which was within the permitted speed

limit of 35 miles, and slowed down for a red traffic light; that when the light turned green he increased his speed, intending to go straight through the intersection. Then, as he said, the Jones car, which he had not previously seen, "made a sudden turn to the left directly in front" of him; that he swerved to the right, attempted to apply his brakes, but did not have "enough time" to avoid the impact.

On cross-examination Ragsdale stated that he first saw the Jones car "just a split second" before the impact. When asked, "What was that car then doing?" his reply was, "He could have been going fifty or could have been sitting still."

First, as to the alleged errors in the rulings on the instructions. Objection is made to the omission of certain language in Instruction No. 1, granted at the plaintiff's request. After enumerating certain duties incumbent upon the defendant in the operation of his car, the instruction told the jury that Jones, the driver of the car in which the plaintiff was riding, "had a right to assume that the defendant * * * would discharge each and every one of the foregoing duties." The defendant contends that the statement that Jones had a right to assume that the defendant would discharge each and every one of the foregoing duties should have been qualified by adding the words "until the contrary became apparent, or, in the exercise of ordinary care, should have become apparent." The answer to this contention is that no such objection was made to the instruction in the lower court, and none can be made for the first time on appeal. Rule 1:8.

Complaint is made of the granting of Instruction No. 3 at the request of the plaintiff. The first paragraph reads:

"The court instructs the jury that whenever any highway has been divided into clearly marked lanes for traffic, drivers of vehicles are required to, as nearly as practicable, drive entirely within a single lane and not to move from one lane to another until the driver of such vehicle has, by the exercise of ordinary care and caution, first ascertained that changing from one lane to another can be made with reasonable safety."

The instruction then told the jury that if they believed from a preponderance of the evidence that the highway over which the defendant was traveling was so marked and that the defendant moved from one lane to another "without using reasonable care and caution to first ascertain that such movement could be made with reasonable safety," he was negligent.

This instruction is based on Code, 1958 Replacement Volume, § 46.1-206, the material portion of which reads thus:

*"Special regulations applicable on streets and highways laned for traffic.*—Whenever any highway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey the following regulations:

  \*   \*   \*   \*   \*   \*   \*   \*

"(b) A vehicle shall be driven as nearly as is practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety; \* \* \* ."

The argument is that this section "was designed to govern the orderly flow of traffic upon open highways and not at intersections." We do not agree with this contention. There is nothing in the language of the statute to show that it has such a limited application. On the contrary, the caption of the section shows that it was intended to apply to city streets as well as open highways.

As has been said, Bridge road approaching the intersection from the east is marked for three lanes of travel. The evidence for the plaintiff indicates that as the Ragsdale car approached the intersection it suddenly moved from the left-turn lane into the through center lane. Clearly the statute was applicable to that movement and the jury, on the issues submitted to them, have decided that the defendant made the turn without first exercising ordinary care to ascertain that he could do so with reasonable safety.

█ The language of the second paragraph of Instruction No. 10, granted at the request of the plaintiff, is assigned as error. It reads:

"The court further instructs the jury that if they believe from a preponderance of the evidence that the plaintiff, Lelia Jones, was susceptible to emotional upset or more susceptible to emotional disturbance than an ordinary person at the time and place of the accident, and that this condition in her made her injuries more severe, or more aggravated, or difficult to cure, then she can, if she is entitled to recover, recover for the additional aggravation and difficulty resulting from the injuries, but not for any pre-existing disability."

The contention is that this language "invaded the province of the jury" in that it told them that the plaintiff had in fact sustained injuries in this collision which aggravated her previous injuries. There is no merit in this contention. The record shows that the lower court offered to amend this paragraph of the instruction by adding "if any" after the word "injuries" and counsel for the defendant declined the invitation. On its own motion the court added the closing language,

"but not for any pre-existing disability." In its final form the paragraph told the jury that the alleged tort-feasor was responsible for the aggravation of a pre-existing condition but not for any pre-existing disability.

Moreover, the matter was further clarified by Instruction "Q", granted at the request of the defendant, which told the jury that the defendant "in any event, would not be liable for anything other than injuries actually caused by the accident in question."

Similarly, it is argued that Instruction No. 11 invaded the province of the jury in that in effect it told the jury that the plaintiff had suffered the several items of damage claimed. It is argued that the words "if any" should have been added after each of these items. We agree with the ruling of the lower court that the qualifying language of the opening paragraph properly limited the items to those proven by a preponderance of the evidence. This paragraph told the jury that if they found from a preponderance of the evidence that the plaintiff was entitled to recover, they might, "in ascertaining the damages to which she is entitled, if proven by a preponderance of the evidence, take into consideration" the several items. Here, too, the matter was further clarified by Instruction "Q" to which reference has been made.

■ Error is assigned to the action of the lower court in deleting the italicized sentence from the first paragraph of Instruction "A" offered by the defendant. This paragraph reads:

"The court instructs the jury that in every civil action for money damages the burden is upon the plaintiff in the suit to prove liability against the defendant, by a preponderance of the evidence. *This burden rests upon the plaintiff throughout the entire trial and applies at every stage thereof*. The jury cannot infer negligence on the part of the defendant from the mere happening of the accident."

While the italicized language was proper it was not necessary, and its deletion did not constitute prejudicial error. The statement in the instruction that "in every civil action for money damages the burden is upon the plaintiff to prove," *etc.*, should not have been incorporated in the instruction, but was not objected to. The jury should have been told that "in this case the burden is upon the plaintiff to prove," *etc.* With this reservation, the instruction, as given, is in the usual form and correctly states the burden of proof.

■ The defendant assigns error to the action of the lower court in refusing to grant at his request a sudden emergency instruction. This instruction would have told the jury that if they believed from

the evidence that the defendant "through no fault of his own, was suddenly confronted by an emergency and was compelled to act instantly in an effort to avoid the accident, then he was not guilty of negligence, if he made such a choice as a person of ordinary prudence, placed in such a position, might have made" under the circumstances, and that whether he used "reasonable care under the circumstances" was a question for the jury. The argument is that under the testimony of the defendant, which the jury might have believed, he was entitled to this instruction.

The lower court refused the instruction on the ground that the defendant's own testimony, and especially that developed on cross-examination, showed that he was not without fault in bringing on the emergency which confronted him just before the impact. We agree with that ruling. The substance of the defendant's own testimony, which has been related, is that he approached this dangerous intersection, when rain was falling, at a speed of from 25 to 30 miles an hour; that although, as he said, his view ahead was obstructed by traffic, he increased his speed and entered the intersection without seeing the Jones car until just a fraction of a second before the impact. According to his own admission, when he first saw the other car he did not know whether it was standing still or going 50 miles an hour. Manifestly, the defendant was not exercising ordinary care to keep a reasonable lookout. In short, he was not without fault in bringing on the emergency. See *Petcosky* v. *Bowman*, 197 Va. 240, 248, 89 S. E. 2d 4, 10, 11, 60 A. L. R. 2d 199.

Police Officer West, who investigated the accident, testified that he detected the odor of alcohol on the defendant's breath at the scene of the accident. This evidence was objected to by the defendant on the ground that there was no allegation in the notice of motion that the defendant was under the influence of intoxicants. The overruling of this objection is assigned as error.

This assignment is without merit for two reasons. In the first place, driving under the influence of intoxicants was a particular of the defendant's negligence which was not required to be specified under Rule 3:18(d). This rule provides that, "An allegation of negligence or contributory negligence is sufficient without specifying the particulars of the negligence." In the next place, the testimony of the officer was entirely favorable to the defendant on the issue. He testified that the odor of alcohol on the defendant's breath "was slight" and that he was not "under the influence of intoxicants." The court properly ruled that this testimony had settled the issue in favor of

the defendant and it was unnecessary to inquire of this witness whether the defendant's "ability to drive was impaired."

The final contention of the defendant is that the lower court committed error in inquiring of Dr. A. R. Coppola the extent of the plaintiff's injuries. The incident arose in this manner: Near the completion of the physician's testimony the court inquired whether the plaintiff "would have any future disability," and, if so, the estimated medical expense in connection therewith. The answer was that, "she's not completely well," "is still having trouble," and that the probable expense of treating her could be "roughly approximated." Again the court inquired: "What I was asking, will she have any difficulties in the future. Do you think she will recover or not?" to which the physician replied, "She isn't recovered completely, your Honor."

At the time there was no objection to these questions propounded by the court, but on the following day counsel for the defendant moved for a mistrial on the ground that such questioning was improper. This motion was overruled and counsel for the defendant excepted. In his brief he has characterized these questions as "misconduct on the part of the court in injecting itself into the case" and indicative of bias in favor of the plaintiff.

This assignment is likewise without merit. Aside from the fact that at the time no objections were made to the court's questions propounded to the witness, the questions merely clarified the previous testimony of the physician. He had detailed the plaintiff's severe injuries, had stated that she had suffered an "acute ruptured disc," was still suffering pain and discomfort, was not recovering satisfactorily, and might need a "subsequent operation." There is nothing in the brief questioning by the court to justify its characterization as "misconduct" or to indicate any bias or prejudice in favor of the plaintiff. On the contrary, the questions were within the permitted discretion of the court. See 20 Mich. Jur., Witnesses, § 31, p. 464; *Petcosky* v. *Bowman, supra*, 197 Va., at page 253, 89 S. E. 2d, at page 13.

The other assignments are entirely devoid of substance and merit no discussion. On the whole we find no error in the rulings of the lower court, and the judgment is

*Affirmed.*