# Richmond

Kathryn A. Cook v. Walter Basnight.

November 28, 1966.

Record No. 6322.

Present, All the Justices.

*Robert S. Cohen* (*Amato, Babalas, Breit, Cohen, Rutter and Friedman,* on brief), for the plaintiff in error.

*E. Page Preston* (*Preston, Preston & Wilson,* on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Kathryn A. Cook brought an action for damages against Walter Basnight for personal injuries received by her in an automobile collision. There was a trial by a jury which resulted in a verdict and judgment for the defendant. We granted the plaintiff a writ of error. Her assignments of error attack the rulings of the trial court on various instructions.

The collision occurred on July 21, 1963, about 11:30 A. M., at the intersection of Granby Street and Bayview Boulevard in the city of Norfolk. The weather was clear and the streets were dry. Granby Street runs approximately north and south with three traffic lanes in each direction. Bayview Boulevard runs east and west. Traffic at the intersection is controlled by lights of the usual type which turn alternately green, amber and red for traffic on both streets. The speed limit for Granby Street traffic at the locality is 35 miles per hour and for Bayview Boulevard 30 miles.

The plaintiff, Mrs. Cook, testified that she approached the intersection, driving westwardly along Bayview Boulevard, with the intention of making a left turn and going south on Granby Street. When she was about 100 feet from the intersection the traffic light turned green in her favor. She entered the intersection at a speed of about 10 miles per hour when the car driven by Basnight northwardly along Granby Street, without stopping, ran through the red

light, striking the left side of her car. She was thrown from her car onto the pavement and injured. The plaintiff further said that when she entered the intersection the Basnight car was some three car lengths south of the intersection.

An investigating police officer appeared upon the scene shortly after the collision. He testified that Basnight told him that as he neared the intersection the traffic light, which had been amber, changed to red; that he attempted to stop his car by applying the brakes which did not hold; that he then applied his emergency brake, but could not stop in time to avoid the collision. This officer further testified that he tested the brakes on the Basnight car, that "there was some pedal left," and that "the brakes were very low." He found that the emergency brake had been applied and that the Basnight car had skidded a distance of 44 feet before the impact.

Basnight, the defendant, who is a police officer of the city of Norfolk, was called as an adverse witness for the plaintiff. He testified that when he was about 180 feet from the intersection there was a green traffic light in his favor, that he undertook to pull in behind another car, that when he again looked at the traffic light it had changed to "caution," that he applied his brakes but found that they would not hold, and that he then tried to go through the "caution light." However, he said, the light turned red for him when he was "right at the intersection." As he then saw the Cook car coming "across the intersection," he applied his emergency hand brake and attempted to cut his car to the left, but was unable to avoid the collision.

Basnight further testified that he had last previously used his brakes at Wards Corner, some distance south of the intersection where the collision occurred; that although he then noticed that "[T]here wasn't a full pedal" to the brake, "it was plenty of brake to stop me. It stopped me in plenty of time."

James M. Caulk, a witness for the plaintiff, testified that he saw the Basnight car approach the intersection and estimated its speed "at least the speed limit or perhaps more." He described the impact as "terrific" and "saw several people thrown out of" the Cook car. Immediately after the impact he said to Basnight, " 'Mister, you went through a red light,' " to which Basnight replied, " 'I know I did, but my brakes failed.' " There was no denial of this statement.

The defendant's main defense to the action was that through no fault of his, as he approached the intersection the brakes on his

car suddenly failed, that had they not failed he would have had ample time within which to stop his car and avoid the collision, and that in the effort to extricate himself from the situation he tried to go through the intersection although he knew that he was confronted by a caution signal.

In support of this position, over the objection of the plaintiff, the trial court gave the jury an emergency Instruction No. 6, which read thus:

> "The court instructs the jury: That in a situation of sudden peril, the law does not require of a person the same degree of care as of one who has had ample opportunity for full exercise of his judgment, and if you believe from the evidence that the brakes of defendant's car failed, without negligence on his part, and that he was otherwise free of negligence, and that the defendant reasonably deemed himself to be confronted with a situation of sudden peril, then the defendant was not guilty of negligence if he made such a choice of action as a persons of ordinary prudence placed in such a position might have made, even if you believe that his actions were not the wisest course to take or that some other course might have been more judicious."

The plaintiff does not question the wording of the instruction. She relies upon the principle that the defense of sudden emergency is not available unless the party who invokes it is without fault in bringing on the emergency. *Petcosky* v. *Bowman*, 197 Va. 240, 248, 89 S. E. 2d 4, 10, 11, 60 A. L. R. 2d 199; *Ragsdale* v. *Jones*, 202 Va. 278, 284, 117 S. E. 2d 114, 119. She contends that the defendant's own testimony shows that he was guilty of negligence which brought about the emergency he sought to invoke. It is argued that his testimony shows that from the testing of his brakes at Wards Corner, a short distance from the scene of the accident, he knew, or should have known, that they were not in proper condition.

The trouble with this contention is that under the terms of the instruction it was for the jury to say whether the defendant was "free of negligence" in bringing on the emergency, and they have accepted as true his testimony that the testing of the brakes showed them to be sufficient. We cannot say, as a matter of law, that that testimony is inherently incredible.

The same is true of the plaintiff's contention that the defendant failed to have his car under proper control as he approached the

intersection. There was no error in granting the emergency instruction.

■ Instruction No. 5, granted at the request of the defendant, read thus:

"The court instructs the jury: That the basis of this action is that the defendant acted in a negligent manner and that his negligence proximately caused injury to the plaintiff. This cannot be inferred from the mere happening of the accident, but on the contrary the defendant is presumed to have operated the car with due and proper care and without negligence, and this presumption remains with the defendant throughout the trial and applies at every stage thereof, and can be overcome only by a preponderance of the evidence."

The granting of this instruction was not proper under the circumstances of the case. When the undisputed evidence showed that the defendant had run through a red traffic light, this made out a prima facie case that he was guilty of negligence.[1] In this situation, the defendant was no longer clothed with a presumption that he had "operated the car with due and proper care," as the instruction read. "[T]he burden of going forward with the evidence on the issue of negligence shifted to the defendant" (*Watford* v. *Morse*, 202 Va. 605, 607, 118 S. E. 2d 681, 683), who then was required to produce evidence in explanation of why he had not stopped at the red signal light. *Pickett* v. *Cooper*, 202 Va. 60, 63, 116 S. E. 2d 48, 51. The instruction failed to tell the jury that the burden of going forward with evidence on the issue of negligence had shifted to the defendant.

The plaintiff sufficiently brought to the attention of the trial court the vice in the instruction when she objected to it on the ground that since the defendant was relying upon the defense of an unavoidable accident caused by a "sudden emergency brake failure," "he has the duty of proving that he was without fault in creating this sudden emergency."

■ Over the objection of the plaintiff, the trial court granted Instruction No. 7, which read: "The court instructs the jury: The following tables of speed and stopping distances, which raise no presumptions, show the results of experiments made with automobiles, unloaded except for the driver, equipped with four-wheel brakes, in

(1) The court had instructed the jury, in accordance with Code, § 46.1-184 [Repl. Vol. 1958], that "a red traffic light indicates that traffic then moving shall stop and remain stopped as long as the red signal is shown."

good condition, on dry, hard, approximately level stretches of highway free from loose material: [Then follow the tables of speed and stopping distances referred to]."

Code, § 46.1-195 [Repl. Vol 1958], upon which the instruction is based reads thus:

"(a)  All courts shall take notice of the following tables of speed and stopping distances of motor vehicles, which shall not raise a presumption, in actions in which inquiry thereon is pertinent to the issues: [The tables of speed and stopping distances as listed in the instruction are here detailed.]

"(b)  The courts shall further take notice that said tables are the result of experiments made with motor vehicles, unloaded except for the driver, equipped with four-wheel brakes, in good condition, on dry, hard, approximately level stretches of highway free from loose material."

The purpose of the statute is to inform motorists that as the result of experiments with automobiles equipped with four-wheel brakes in good condition and under the stated conditions, drivers proceeding at the stated tabulated speeds will require the relative average stated distances within which to stop their vehicles. In other words, a motorist driving a car equipped with four-wheel brakes in good condition and under the stated conditions, proceeding at the stated speeds, should allow for the average stated distances in order to stop his car.

The instruction as written invited the jury to speculate on whether, under the circumstances of this case, the defendant would have been able to stop his car in time to have avoided the collision had his brakes been in proper condition. But whether he would have been able to do so would depend upon factors other than the proper condition of his brakes. It would depend upon the time at which the brakes were applied, the force with which they were applied, and the distance the defendant's car was from the desired point of stopping at the time of the application. The instruction failed to tell the jury of the necessity of proof of these factors before they could determine whether the defendant would have been able to stop his car, had the brakes been in proper condition.

Similar instructions were held to be improper in *Beasley* v. *Bosschermuller*, 206 Va. 360, 366, 143 S. E. 2d 881, 886, and *Shelton* v. *Mullins*, 207 Va. 17, 22, 147 S. E. 2d 754, 758. In each of these cases

we held that the granting of the instruction was harmless error. In the present case, for the reasons stated, we hold that the granting of the instruction was prejudicial to the plaintiff.

We find no prejudicial error in the action of the trial court in refusing to grant plaintiff's Instruction P-1. This instruction would have told the jury that if they believed from a preponderance of the evidence that the defendant was guilty of negligence in the operation of his car and that such negligence proximately caused the accident, they should find for the plaintiff. The subject of this instruction was fully covered in other instructions granted at the request of the plaintiff.

Since, in our view, there must be a new trial, we have examined and considered the defendant's several assignments of cross error to the rulings of the trial court on other instructions. We find only one of these to be meritorious.

As has been said, the plaintiff called the defendant as an adverse witness. Pertinent thereto the defendant asked for Instruction D-4, which was refused. It read thus:

"The court instructs the jury: That where the plaintiff calls the defendant as an adverse witness, while he or she is not bound by such of the defendant's testimony as may be in conflict with the evidence introduced on behalf of the plaintiff, the plaintiff is bound by so much of the clear, logical testimony of the defendant as is reasonable and uncontradicted."

The instruction should have been granted. *Weddle, Adm'x* v. *Draper*, 204 Va. 319, 322, 130 S. E. 2d 462, 465, and cases there cited; *Bare* v. *Jones*, 206 Va. 848, 851, 147 S. E. 2d 145, 147; 32A C. J. S., Evidence, § 1040(2), pp. 769, 770.

Because of the error of the trial court in granting Instructions No. 5 and 7, at the request of the defendant, the judgment will be reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*