NATIONWIDE MUTUAL INSURANCE COMPANY

V.

JOSEPH W. HARGRAVES, JR.

Record No. 901289

June 7, 1991

Present: All the Justices

*Thomas A. Fitzgerald, II (Conway W. Smith, III; West, Stein, West & Smith*, on brief), for appellant.

*Joseph M. DuRant (Patten, Wornom & Watkins*, on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

Joseph W. Hargraves, Jr. owned a 1984 BMW automobile which was stolen on November 3, 1987. He reported the theft to the police and to his insurer, Nationwide Mutual Insurance Company (Nationwide).

On January 19, 1988, Nationwide informed Hargraves that it was prepared to pay his theft claim and the parties agreed on the sum of $11,355.75 as compensation for the loss. On January 20, 1988, Hargraves picked up a check for $2,071.29 and two days later he received a second check from Nationwide for the balance.

On August 9, 1988, Nationwide initiated this suit against Hargraves alleging that prior to January 20, 1988, Hargraves knew that his vehicle had been recovered, but that he had failed to advise Nationwide of the vehicle's recovery and had accepted payment for its loss. Nationwide claimed that these actions constituted fraud and breach of contract, and sought damages, costs,

and attorney's fees. At the close of Nationwide's evidence, the trial court granted Hargraves's motion to strike the evidence and entered summary judgment for Hargraves. We awarded Nationwide an appeal.

In accordance with applicable principles, we state the facts in the light most favorable to Nationwide. *Costner* v. *Lackey*, 223 Va. 377, 381, 290 S.E.2d 818, 820 (1982). Hargraves's vehicle was stolen from a used car lot in Virginia Beach where he had parked it for approximately one month, hoping to sell it. He reported the theft to David Corley, an independent agent for Nationwide. Hargraves also executed an Affidavit of Vehicle Theft which stated that he agreed to cooperate with Nationwide in recovering the vehicle and that, if he received information that the vehicle was recovered, he would inform Nationwide immediately. Two other Nationwide employees, Barbara Haupt, a claims examiner, and Raymond LaFountain, a regional investigator, also spoke with Hargraves about his claim and instructed Hargraves to contact them if the vehicle was recovered.

Hargraves, called as an adverse witness by Nationwide, testified that he received a call on January 17, 1988, from a New York State Trooper informing him that his vehicle had been recovered. He testified that he called Corley's office on January 18, 1988, and spoke to a person he thought was named Debbie. He testified that he had told her that the vehicle had been recovered and that he had given her the name and telephone number of the New York State Trooper who had called him. Hargraves claimed that he asked Debbie to have Corley return his call. Hargraves heard nothing further from Corley or Nationwide until the next day, January 19, when Haupt called with Nationwide's offer to settle the claim for $11,355.75. Hargraves did not mention the recovery of the vehicle to Haupt and accepted the payments for his loss claim on January 20 and 22, 1988.

On February 17, 1988, Jeff Hogge, Nationwide's regional claims manager, received a telephone message from Corley that Hargraves's vehicle had been recovered and that Trooper Hendrick of the New York State Police was the contact officer. Hogge sent a memorandum to LaFountain requesting a review of the matter by Nationwide's attorney, stating that, if Nationwide lost money, suit should be filed, and that the policyholder might buy back the vehicle to avoid litigation.

Nationwide's attorney wrote Hargraves on May 20, 1988, telling him of the recovery, that the salvage value of the vehicle was only $6,000.00, and demanding payment for the difference between the settlement proceeds and the salvage value, $5,355.75. Apparently, Hargraves declined to respond affirmatively to this demand, leading Nationwide to file this suit. Six days after the suit was filed, Nationwide sold the vehicle for scrap value, receiving $4,446.50 for it.

At trial the three female employees of David Corley testified. None was named Debbie and none was aware of any employee of the office named Debbie. Two of the three testified that they had never spoken with Hargraves in January of 1988 about the recovery of his vehicle. The third witness testified that she had taken a call from Hargraves in February in which he asked about some of the personal items in his vehicle, but that at no time did Hargraves ask her to inform Corley or Nationwide of the vehicle's recovery.

Corley testified, by *de bene esse* deposition, that he never received any message from Hargraves about the return of the vehicle and that he had informed his staff and Hargraves that inquiries and information concerning the claim should be directed to LaFountain.

Nationwide argues that this evidence was sufficient to present a jury question on its fraud and breach of contract counts. We agree.

Pivotal to resolution of this case is the question whether Nationwide is bound by the testimony of Hargraves, whom it called as an adverse witness. If Nationwide is bound by Hargraves's testimony that he informed the company of the vehicle's recovery in a telephone conversation with "Debbie" in Corley's office on January 18, neither an action for actual fraud, constructive fraud, nor breach of contract could be sustained. However, Nationwide is bound by this testimony only insofar as it is clear, reasonable, and not in conflict with other evidence presented by Nationwide. *Cook v. Basnight*, 207 Va. 491, 497, 151 S.E.2d 408, 412 (1966).

Hargraves's testimony regarding notification was in conflict with the testimony of Corley's employees that they did not receive a call from Hargraves stating that the vehicle had been recovered, that there was no employee named Debbie, and that Hargraves failed to mention the recovery of the vehicle to Haupt when he

received the payment checks. Consequently, Nationwide is not bound by Hargraves's testimony.

## I. FRAUD

■ The elements of actual fraud are familiar: a showing by clear and convincing evidence that a false representation of a material fact was intentionally and knowingly made with the intent to mislead. The injured party must have been damaged as a result of his reliance on the misrepresentation which may take the form of silence or the failure to speak. *Spence* v. *Griffin*, 236 Va. 21, 28-29, 372 S.E.2d 595, 598-99 (1988); *National Airlines, Inc.* v. *Shea*, 223 Va. 578, 583, 292 S.E.2d 308, 311 (1982).

■ It is undisputed that Hargraves knew the vehicle had been recovered prior to accepting the settlement checks from Nationwide and that on no occasion did he inform Haupt or LaFountain of the recovery. As discussed above, Nationwide presented sufficient evidence to raise the issue of whether Hargraves intentionally and knowingly failed to report the recovery of the vehicle with the intent to mislead.

■ Nationwide also established that, because it was not notified of the recovery prior to settlement, it suffered damage. The insurance policy states that Nationwide may satisfy a claim for loss "[a]t any time before the loss is paid or the property is so replaced, at its expense return any stolen property to the Named Insured . . . with payment for any resultant damage thereto . . . ." Hargraves's alleged failure to notify the insurance company deprived Nationwide of its right to return the stolen property with payment for the damage, a right which expired after payment of the loss.

Therefore, the trial court erred in striking Nationwide's evidence on its actual fraud count.

## II. CONSTRUCTIVE FRAUD

■ Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it. *Kitchen* v. *Throckmorton*, 223 Va. 164, 171, 286 S.E.2d 673, 676 (1982). Nationwide alleged that Hargraves engaged in constructive fraud when he failed to notify the specific Nationwide employees he was told to notify re-

garding his claim or recovery of the vehicle. Nationwide submitted sufficient evidence to allow a jury to determine: (1) whether Hargraves was required to inform certain employees of Nationwide; and (2) whether his failure to do so, although not withheld with an intent to mislead, constructively defrauded Nationwide. The trial court erred in striking Nationwide's evidence on its constructive fraud count.

## III. BREACH OF CONTRACT

■ Nationwide asserted that submission of a sworn proof of loss form was required under the policy. As a party to the policy contract and as an affiant in the Affidavit of Vehicle Theft, Hargraves agreed to cooperate with the company. Further, the Affidavit specifically required Hargraves to notify Nationwide if he knew that the vehicle was recovered. As discussed above, Nationwide produced sufficient evidence to allow a jury to find that Hargraves's actions constituted a breach of contract, and the trial court erred in striking Nationwide's evidence on its breach of contract count.

## IV. DAMAGES

■ The trial court struck Nationwide's evidence of damages, holding that it was too speculative because it showed neither the condition of the vehicle at the time it was sold for salvage nor the cost of repair had Nationwide been given the opportunity to repair and return the vehicle as allowed by the policy. We disagree. Nationwide claimed that it was entitled to the difference between the amount it paid Hargraves and the amount it recovered from the sale of the vehicle. Assuming Nationwide is correct as to the measure of damages, we find nothing speculative about the factors in that damage formula. The defendant, of course, is entitled to introduce evidence in support of his theory and a different amount of damages. The trial court erred in striking Nationwide's evidence on its damages.

Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings.

*Reversed and remanded.*