# Staunton

A. F. LECKIE, EXECUTOR, ETC., v. U. S. SEAL, RECEIVER.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Greever & Gillespie* and *Crockett & Tucker*, for the appellants.

*Kenneth C. Patty*, for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Tazewell county, wherein it was adjudged "that the judgment. rendered against the Bluefield Mattress Company, a corporation, in favor of Mrs. William Leckie, dated April 25, 1930, for the sum of $2,753.35 * * * is null and void as against the Graham Manufacturing Corporation and does not constitute a lien upon the property owned by the Graham Manufacturing Corporation described in this cause; that the judgment against the Bluefield Mattress Company, a corporation, in favor of the First National Bank of Anawalt, a corporation, dated May 13, 1930, for the sum of $3,200.00 * * * is null and void as against Graham Manufacturing Corporation and does not constitute a lien upon the property of Graham Manufacturing Corporation described in this cause; * * *."

The decree further adjudged that the judgment rendered against the Graham Manufacturing Corporation in favor of Twin City National Bank, dated October 27, 1930, for the sum of $3,635.00 was a valid lien upon the property of the Graham Manufacturing Corporation.

There are several assignments of error, but in the view we take of the case, there is but one main question involved, namely, are the judgments of appellants, obtained against Bluefield Mattress Company, an alleged corporation, voidable or void?

By stipulation of counsel, the following facts appear:

"The defendants, A. F. Leckie, executor of the estate of Mrs. William Leckie, deceased, and Jack Bennett, receiver for the First National Bank of Anawalt, a corporation, having indicated their intention to apply to the Supreme Court of Appeals of Virginia for an appeal from the decision of the Circuit Court of Tazewell county, Virginia, as set forth in a decree entered by said court on the 28th day of July, 1932, and in order to reduce the expense incident to said appeal it is stipulated between counsel for U. S. Seal, receiver for Twin City National Bank, a corporation, complainant, and counsel for A. F. Leckie, executor of the estate of Mrs. William Leckie, deceased, and counsel for Jack Bennett, receiver for the First National Bank of Anawalt, a corporation, that the following statement of facts comprises all of the evidence in this cause material to the issues involved in said appeal:

"The Graham Manufacturing Corporation is a Virginia corporation, chartered May 5, 1919, and was engaged in the manufacturing of mattresses in the town of Bluefield, Virginia, formerly Graham; that the Graham Manufacturing Corporation, at one time, did business under the name of 'Bluestone Mattress and Pillow Company.'

"That on the 20th day of February, 1924, pursuant to section 4722 (1) of the Code of Virginia, Graham Manufacturing Corporation executed and filed in the clerk's office of the Circuit Court of Tazewell county, Virginia, a certificate which is found of record in partnership Record Book, p. 17, and is in words and figures as follows, to-wit:

" 'To the clerk of the Circuit Court of Tazewell county, Virginia:

" 'This is to certify that the Graham Manufacturing Corporation existing and doing business under and by virtue of the laws of Virginia, intends to conduct in the State of Virginia, from this date, a business under the name of Bluefield Mattress Company, with offices at Graham, Virginia.

" 'That the period for the duration of said business shall be unlimited.

" 'That the Graham Manufacturing Corporation, of Graham, Tazewell county, Virginia, is the sole owner of the Bluefield Mattress Company.

" 'This the 11th day of February, 1924.

" 'GRAHAM MANUFACTURING CORPORATION,
" 'A. F. LECKIE,
" '*President.*

" 'ATTESTE:

" 'A. E. JENNINGS,
" '*Secretary.*'

\* \* \* \* \* \* \* \* \*

"That the Graham Manufacturing Corporation used various kinds of stationery, the letterheads most generally used having at the top in large letters 'Bluefield Mattress Company,' and underneath in small letters the words 'Bluefield Manufacturing Corporation'; that the Graham Manufacturing Corporation kept a bank account in the Twin City National Bank in the name of Bluefield Mattress Company; that all checks drawn on this account were signed by the Bluefield Mattress Company.

"That, in 1924, Bluestone Mattress and Pillow Company, which at that time was the trade or assumed name used by Graham Manufacturing Corporation, borrowed from the First National Bank of Anawalt the sum of $3,500.00, which was evidenced by a note bearing date of April 23, 1924. This note was endorsed by A. F. Leckie and renewed from time to time. On December 19, 1924, the loan was renewed in the name of Bluefield Mattress Company, the trade or assumed name of Graham Manu-

facturing Corporation having been changed in the meantime. The renewal note was endorsed by W. E. Ritter, president. The first renewal thereof was endorsed by W. E. Ritter, personally. This note was renewed from time to time, and curtailments made on the same or subsequent renewals being made in the name of Bluefield Mattress Company and endorsed by W. E. Ritter, the last note being for $3,200.00 and dated January 23, 1930. Approximately at the same time of the loan by the First National Bank of Anawalt, Mrs. William Leckie made a loan to the Bluestone Mattress and Pillow Company, which note was signed by the Bluestone Mattress and Pillow Company, and was later renewed in the name of Bluefield Mattress Company, which note was likewise endorsed by W. E. Ritter. The loan was renewed from time to time, and the last note evidencing the debt was for the sum of $2,711.20, and was dated the 10th day of September, 1920. Checks were given to The First National Bank of Anawalt and to Mrs. Leckie for interest, and curtailments were drawn by Bluestone Mattress and Pillow Company until the trade name was changed to Bluefield Mattress Company, after which they were drawn by Bluefield Mattress Company on the Twin City National Bank.

"That on the 25th day of April, 1930, Mrs. William Leckie recovered in the Circuit Court of Tazewell county a judgment against the Bluefield Mattress Company, alleging it to be a corporation, and W. E. Ritter for the sum of $2,753.35, with interest thereon from the 9th day of December, 1929, and $9.05 costs, and an attorney's fee of $10.00, which judgment was duly docketed in the office of the clerk of the Circuit Court of Tazewell county on the 25th day of April, 1930, in Judgment Lien Docket and Execution Book No. 12, p. 59; that said judgment was obtained on the note hereinbefore described. Said suit was by notice of motion for judgment, and was against the Bluefield Mattress Company, alleging it to be a corporation. Neither in the notice of motion for judgment nor in the order entering judgment was the name 'Gra-

ham Manufacturing Corporation' mentioned, nor was any proof taken in obtaining said judgment, connecting the Graham Manufacturing Corporation with the Bluefield Mattress Company.

"That on the 13th day of May, 1930, The First National Bank of Anawalt recovered a judgment in the Circuit Court of Tazewell county against the Bluefield Mattress Company and W. E. Ritter for the sum of $3,200.00, with interest thereon from April 23, 1930, until paid and $8.05 costs, which judgment was duly docketed in the clerk's office of the Circuit Court of Tazewell county on the 14th day of May, 1930, in Judgment Lien Docket and Execution Book No. 12, p. 62; that said judgment was obtained on the note hereinbefore mentioned made by Bluefield Mattress Company and paid to The First National Bank of Anawalt; that said judgment was obtained by notice of motion for judgment, and that neither in the notice nor in the order entering judgment was the name 'Graham Manufacturing Corporation' mentioned, nor was any proof taken in obtaining said judgment connecting the Graham Manufacturing Corporation with the Bluefield Mattress Company.

"That on the 27th day of October, 1930, Twin City National Bank, a corporation, obtained a judgment against Graham Manufacturing Corporation, doing business under the assumed or fictitious name of Bluefield Mattress Company and W. E. Ritter, for the sum of $3,635.50, with interest on $325.00 from September 24, 1930, until paid; with interest on $1,800.00 from September 26, 1930, until paid; with interest on $1,180.00 from October 6, 1930, until paid, and with interest on $330.50 from October 27, 1930, until paid; and, in addition thereto, $3.72 protest fees and $9.50 costs, which judgment was docketed in the office of the clerk of the Circuit Court of Tazewell county, Virginia, on the 27th day of October, 1930, in Judgment Lien Docket and Execution Book No. 12, p. 95; that said judgment was obtained on certain notes owing from the Graham Manufacturing Corpora-

tion to the Twin City National Bank, and which notes were signed 'Bluefield Mattress Company.'

"W. E. Ritter, at the time of the institution of the suits of Mrs. William Leckie, The First National Bank of Anawalt and the Twin City National Bank, was the president of Graham Manufacturing Corporation. W. E. Ritter testified that before the rendition of the judgments of Mrs. William Leckie and The First National Bank of Anawalt against Bluefield Mattress Company, he, as president of Graham Manufacturing Corporation, had knowledge of the pendency of those two suits, and further testified that the Graham Manufacturing Corporation recognized the debts on which those two suits were brought as debts of the Graham Manufacturing Corporation.

"That at the time the original loans were made by The First National Bank of Anawalt and Mrs. William Leckie to the Bluestone Mattress and Pillow Company, A. F. Leckie, who was the son of Mrs. William Leckie, was the president of the Graham Manufacturing Corporation and a stockholder in The First National Bank of Anawalt, and A. E. Leckie negotiated the loan for Bluefield Mattress Company with The First National Bank of Anawalt.

"That C. E. Prillaman, cashier of theTwin City National Bank, in answer to the following question: 'Do you know who was the owner of the account that your bank had in the name of the Bluefield Mattress Company?' answered as follows: 'Yes, sir, we knew it to be the trade name of Graham Manufacturing Corporation.'

"These stipulations cover all the material facts developed in the evidence taken before the commissioner in chancery and also such facts as are set forth in the exhibits referred to in the bill and answers in this cause."

There is quite an array of authority from other States, in support of the contention of appellants, that where the right party is sued by the wrong name and makes no objection, the judgment against him by the wrong name is binding. An examination of the cases cited, with few

exceptions, discloses that the difference in the name was slight.

█ In 1 Va. L. R. 548, the Virginia rule is thus stated: "Where the mistake in the name of the corporation, whether plaintiff or defendant, is slight, and it clearly appears what corporation is meant—or as it is sometimes expressed, where the pleading incorrectly *names* a corporation, but correctly describes it—the mistake is amendable, and can be taken advantage of only by plea in abatement. But where the error is so material (especially, it is said, in the name of the defendant) that *no such* corporation exists, it is fatal at the trial; 1 Thomp. Corp. 290 *et seq;* 1 Morawetz, Corp. (2d Ed.) 354-5; *Bank of Va.* v. *Craig,* 6 Leigh [33 Va.] 399; *Mason* v. *Farmers' Bank,* 12 Leigh [39 Va.] 90. Nor is the result last stated obviated, as it would seem, by the provision of section 3258 of the Virginia Code, which applies only where the misnomer was pleadable in abatement at common law."

█ In the case at bar there was no claim or misnomer. Appellants rely upon the doctrine that one may lawfully adopt any trade name in which to conduct his business and in the absence of fraud may sue or be sued by it. That doctrine, however, is circumscribed in Virginia by section 4722 (1), which provides:

"No person nor corporation shall conduct or transact business in this State under any assumed or fictitious name unless such person or persons, or corporation shall sign and acknowledge a certificate setting forth the name under which such business is to be conducted or transacted, and the name of each and every person or corporation owning the same, with their respective post office and residence addresses, and where the corporation is a foreign corporation the date of the certificate of authority to do business in Virginia issued to it by the State Corporation Commission, and file the same in the office of the clerk of the court in which deeds are recorded in the county or corporation wherein the business is to be conducted.

"Where business is conducted in this State under an assumed or fictitious name by a corporation, such corporation shall file in the office of the clerk of the State Corporation Commission a copy of such certificate; duly attested by the clerk of the court in which the original is on file. Each such person or corporation now doing business in Virginia under an assumed or fictitious name shall immediately comply with the foregoing provision."

The main object of the statute is to prevent fraud and to compel an individual or a corporation to disclose the name of the real owner of the business, in order that the person or corporation may sue in or be sued by the proper name. There is a further reason for the enactment of the statute and that is that prospective creditors of the firm or corporation may, by an examination of the lien dockets, determine to whom credit can be extended. Judgments are docketed in the true name of the plaintiff and defendant, and all that is required of an examiner of the lien docket, in order to ascertain against whom a judgment is docketed, is to look for the name of the person or corporation under investigation.

In the case at bar, no investigation, however diligent, could have disclosed a judgment docketed against the Graham Manufacturing Corporation.

In construing a similar statute, the court, in *Humphry* v. *City National Bank*, 190 Ind. 293, 130 N. E. 273, 277, said: "Its obvious purpose is to give information as to the persons who shall be named as defendants and served with process in case suit is brought on a cause of action arising out of any business done in the assumed name, or out of any contracts made in such name."

No language is embodied in section 4722 (1) which even tends to support the proposition that it was the intention of the legislature that a judgment obtained against a fictitious person or corporation as such, should be a lien upon the property of the true owner.

The judgments obtained by appellants against Bluefield Mattress Company, an alleged corporation, in

our opinion present a "perfect anomaly." The agreed statement of facts shows that the judgments (by default) were obtained on notes executed by Bluefield Mattress Company; that neither in the notice of motion nor in the order entering the judgments was there any mention of the Graham Manufacturing Corporation as the true owner. That the Mattress Company was not a corporation is apparent from the record. Appellants had the opportunity to sue the true owner, Graham Manufacturing Corporation, and to introduce proof that the Mattress Company was in reality the corporation. This they failed to do, and hence obtained judgments against a non-existent corporation. It is now too late to correct the fatal omission of averring in the pleadings and sustaining by proof the true status of the defendants.

In the absence of averment in the notice that the Bluefield Mattress Company and Graham Manufacturing Corporation were one and the same, it follows that no proof could be introduced that such was a fact. Inasmuch as proof could not be introduced in the first instance, in the absence of averment there is less reason for permitting it to be done after judgment. The judgments stand against the Mattress Company—a non-existent corporation. An execution against the Graham Corporation would prove unavailing.

In *Tompkins* v. *Branch Bank,* 11 Leigh (38 Va.) 372, the court reviewing a situation where a judgment was obtained against a branch instead of the parent bank, said (opinion by Tucker, P.) : "The bank, and the bank alone, as the corporation, is liable: the demand must be against it; the contract must be laid with it, for such it truly is; the implied promise must be laid as made by it, and the breach must correspond. Then will follow in symmetrical order the pleadings, the verdict, and the judgment; upon which last, such an execution as the statute contemplates will issue against the goods and chattels of the bank, wherever found. Thus everything is harmonious

and consistent with legal principles, while the present action is in irreconcilable conflict with them all."

In Porter v. Nekervis, 4 Rand. (25 Va.) 359; Culpeper Agricultural, etc., Society v. Digges, 6 Rand. (27 Va.) 165, 18 Am. Dec. 708; Bank of Virginia v. Craig, 6 Leigh (33 Va.) 399; Mason v. Farmers' Bank, 12 Leigh (39 Va.) 84, it is held that judgments similar to the judgments under review are void.

In our opinion it is no longer an open question in Virginia that it is essential in order to obtain a valid judgment against the real owner, when trading under an assumed name, that the pleading should aver the name of the real owner; that the proof should sustain the allegation, if controverted; and that judgment should be entered against the defendant in his or its true name.

Such is the doctrine laid down in Langhorne v. Richmond City Ry. Co., 91 Va. 364, 22 S. E. 357. Judge Buchanan speaking for the court, said: "A corporation may be known by several names, as well as a natural person, and a recovery may be had against it in its true name provided its identity 'be averred in pleading and apparent in proof.' In McGregor v. Fuller Implement Co., 72 Iowa 143, 33 N. W. 464, it was held, in an action on account, that the value of services rendered to one corporation cannot be recovered in a suit against another corporation on the ground that the two corporations are identical, and that there was only a change of name, unless the fact thus relied upon is distinctly alleged in the plaintiff's pleading. Angel & Ames on Corp., section 234; 2 Beach on Pr. Corp., section 864; Daniel on Neg. Inst., section 399; 4 Amer. & Eng. Encl. Law, 204, note (3)."

This rule prevails to a large extent in other jurisdictions, as shown by an annotation in 56 A. L. R. 452:

"It seems to be recognized that suit brought by or against a corporation should be in the true name of the corporation. In all of the cases cited heretofore, wherein a corporation was a party, it appeared as a fact that the

corporation acting under the assumed name sued or was sued in its true name."

Upon the whole case, we are of opinion to affirm the decree of the circuit court.

*Affirmed.*

Epes, J., concurs in results.