# CIRCUIT COURT OF THE CITY OF NORFOLK

Doug Discount
Roofing Co., Inc.

v.

Reliable Builders, Inc.

October 29, 1997

Case No. (Law) L97-1202

BY JUDGE LYDIA CALVERT TAYLOR

This matter came before the court on a hearing on defendant's demurrer to this civil contract action filed by Doug Discount Roofing Company, Inc., a subcontractor, on an alleged contract for roofing work that it entered into with the defendant, Reliable Builders, Inc., the general contractor.

This action was filed on April 8, 1997, as Doug's Discount Roofing, Inc. v. Reliable Builders, Inc., but at the demurrer hearing on August 14, 1997, the plaintiff moved to amend the style of the suit to Doug Discount Roofing, Inc. v. Reliable Builders, Inc., which unopposed amendment the court granted. Plaintiff later filed an amended motion for judgment which merely changed the style of the case: "Doug Discount Roofing Company, Inc., formerly in business as James Lundy trading as Doug Discount Roofing Company, Inc. v. Reliable Builders, Inc." This opinion treats defendant's demurrer as if it were to the amended motion for judgment and overrules that demurrer. The amended motion for judgment was filed by this court on October 29, 1997, after consideration of the letters of both counsel as to when that motion was ordered to be filed at the August 14, 1997, hearing.

The contract was to replace a roof on a building in Hampton, Virginia. The plaintiff claimed that it completed the work in a timely and satisfactory manner and, after demand, has not been paid by the defendant, as required by the contract.

Defendant's demurrer claimed that plaintiff is neither a corporation registered by the Virginia State Corporation Commission nor licensed to do

business in the Commonwealth, nor is that name registered as a fictitious name for some other entity. It argues that plaintiff therefore has no standing or basis, in contract or otherwise, to seek payment against defendant in the motion for judgment. Defendant further avers in its demurrer that the motion for judgment fails to state a cause of action upon which relief can be granted, but no argument was presented as to the latter issue at the hearing beyond the fact that Doug Discount Roofing Company, Inc., was not the name of an entity recognized under Virginia law at the time of the formation of the contract.

Plaintiff entered as its exhibit 1 at the demurrer hearing, without objection, the subcontract agreement that it alleges is a binding contract between plaintiff and defendant. It should be noted that the date of the formation of the contract is not alleged in the motion for judgment, but there is no claim in defendant's demurrer that the failure to allege that date is a fatal defect in a suit on a contract. Exhibit 1, which is titled "Subcontract Agreement between Reliable Builders, Inc., Contractor, and Doug's Discount Roofing, Inc., Subcontractor," states on page 1 that the agreement was "made this 8th day of November, 1993. . . ." Thus, the date of the formation of the contract is alleged to be November 8, 1993. Plaintiff's exhibit 1, the purported contract between plaintiff and defendant, carries the signature of James D. Lundy on page 3 under the heading "Doug's Discount Roofing, Inc., By: James D. Lundy." To the left of Mr. Lundy's signature, under the heading "Witness: Attest: (Seal)" is the signature of a "Patricia A. Prutsman." There are no signatures under the heading of "Reliable Builders, Inc. By: _____ (President)," which heading is printed out beneath the space for Doug's Discount Roofing, Inc.

It should be noted that the plaintiff's present name, as listed with the State Corporation Commission, is Doug Discount Roofing, Inc., but the contract at issue in this suit, which is exhibit 1, lists the plaintiff as Doug's Discount Roofing, Inc. It is apparent from defendant's exhibit 1, a certificate from the State Corporation Commission, that plaintiff incorporated on September 29, 1995, under the former name *Doug*, although it was not then incorporated under either name as of the formation, or signing, of the contract on November 8, 1993, which it signed as *Doug's*. Both parties agreed that the use of the apostrophe s ('s) or its elimination made no difference in whether or not the plaintiff was properly denominated in the motion for judgment or on the alleged contract between plaintiff and defendant. The defendant's principal concern was that the plaintiff signed as a corporation and was listed

by a corporate name in the contract that it signed on November 8, 1993, at a time when it was not yet incorporated.

Defendant's exhibit 1 shows that Doug Discount Roofing Company, Inc., is a corporation in good standing in Virginia as of June 17, 1997, having been incorporated on September 29, 1995. Therefore, defendant's argument that plaintiff is not an entity registered with the S.C.C. or licensed to do business in Virginia is incorrect, as of the present and at all times since its incorporation on September 29, 1995; however, that argument is correct as to the time of the alleged formation of the contract on November 8, 1993.

At the August 14 hearing, the issue of whether the hearing was in fact being held on a demurrer or, because two exhibits were introduced by the parties, on a motion for summary judgment, was not addressed by the parties. Because the two exhibits could have been appended to the motion for judgment and thus formed a part of the pleadings, the court treated the motion as a demurrer to the motion for judgment. The defendant's position is that the plaintiff is a nonentity and therefore any judgment granted in its favor a nullity, because it was not a corporation, licensed in Virginia by the S.C.C. to do business as such, at the time of the alleged formation of the alleged contract. Based in part on the two exhibits, the parties stipulated at the August 14 hearing to the following facts; they also agreed that certain legal issues were still in dispute:

1. The proposal for contract, which was prepared by the defendant, was dated November 8, 1993.

2. Plaintiff corporation was not incorporated with the S.C.C., under the laws of Virginia, in the name set forth for the plaintiff on the motion for judgment as of November 8, 1993, the date on which the plaintiff alleges it entered into the contract with the defendant.

3. The plaintiff later did incorporate under the name used in its amended motion for judgment, Doug Discount Roofing, Inc., on September 29, 1995, not quite two years after the contract allegedly was formed and after all of the work on that contract was allegedly performed. (Defendant, by so stipulating, does not concede that any work that was to be done by the plaintiff was in fact performed, but rather that, if it was performed, the performance was completed before the plaintiff was incorporated with the S.C.C. under the name of "Doug Discount Roofing Company, Inc.")

4. Under the laws of the Commonwealth of Virginia, including Virginia Code § 13.1-613, the plaintiff was not legally entitled to use the name of Doug Discount Roofing Company, Inc., until such time as it incorporated itself with the S.C.C. under that name, which did not occur until 1995. Thus,

the plaintiff's use of the name of "Doug Discount Roofing Company, Inc.," in 1993 in doing business with the defendant – that is, at the time of the alleged formation of the contract between plaintiff and the defendant – was a use that was not permitted to it by law.

5. Plaintiff contends, and defendant has no information at this time to dispute, but requires the plaintiff to prove at trial, that plaintiff has always operated and done business using the name of Doug Discount Roofing Company, Inc., even before it incorporated under that name in 1995. The period during which the plaintiff contends it, at least informally, used the name of Doug Discount Roofing Company, Inc., included November 8, 1993, when the plaintiff alleges the contract was entered into.

6. Plaintiff further contends, but defendant does not stipulate, that Mr. Lundy had been advised in 1993 by his then-counsel that the business had, in fact, been incorporated under the name of Doug Discount Roofing Company, Inc., and that, therefore, Mr. Lundy reasonably believed that his business was operating under that name as a legal corporation at the time that he negotiated and allegedly entered into a contract with the defendant corporation. (This is obviously a matter of proof at trial, and no argument as to the legal significance of Mr. Lundy's belief was presented to the court.)

Under the theory of the demurrer as presented by the defendant, the court finds two issues need to be resolved. The first is ripe for decision; the second is not.

The second issue, which was not clearly set out in the very brief demurrer and on which no authorities were presented, is dealt with later in the second to the last paragraph of this court's opinion, *infra*; that issue deals with the effect of plaintiff's using a name it was not entitled to use on its *legal ability to contract*. The defendant will be allowed to redemur and brief that second issue. There are material issues of fact that remain to be resolved at trial on whether a contract was formed, if the plaintiff's cause of action survives the second demurrer. The parties differ as to whether or not this proposal for contract by the defendant, which defendant presented to plaintiff, resulted in a binding contract after plaintiff signed, given that the defendant never signed in the proper place. Plaintiff claims that the defendant's proposal for contract was, in fact, accepted when Mr. Lundy signed on behalf of the plaintiff. Alternatively, plaintiff suggests that the signature of Patricia A. Prutsman in a box headed "witness/attest," located to the left of Mr. Lundy's signature on behalf of plaintiff company, constituted an acceptance by the defendant of the contract, even though there is no signature in the box marked "Reliable Builders, Inc." Even if the plaintiff's theory were legally correct, whether

Mrs. Prutsman did or did not have authority to act on behalf of the defendant, Reliable Builders, Inc., and by signing intended to so act, cannot be established without testimony. Defendant did not raise this point in its demurrer, apparently because the issue of whether the signatures showed that the contract was actually formed cannot be determined on demurrer.

The first issue presented is: may a corporation sue to recover on a contract in the corporate name in which it in fact contracted (and which name it is now legally entitled to use), when it was not entitled to use that name at the time it allegedly entered into the contract? That is, if the name of the defendant refers to what was in fact a "nonentity" at the time of the formation of the contract, can the plaintiff, because it now is lawfully entitled to use that name, bring suit under that name on a cause of action that arose when it was not entitled to use that corporate name? None of the cases presented on this issue to the court was squarely on point. It seems only logical, however, that a plaintiff should be allowed to sue in a manner that makes clear who it is now and who it was at the time its right of action arose. At the time of the formation of the contract on which it is suing, although the plaintiff did not enjoy the right to use that name, it did so in the contract. Thus, the style of the case properly represents the name under which plaintiff contracted with defendant, which is its present lawful name, although not the name the plaintiff, by law, was entitled to operate under prior to incorporation.

Defendant called the court's attention to the cases of *Leckie v. Seal*, 161 Va. 215 (1933); *Bryan v. Fewell*, 191 Va. 647 (1950); and *Lorcom House Condominium v. Wells*, 3 Va. Cir. 226 (Arlington Co. 1984). All of defendant's authority on that first issue, however, was inapposite. *Leckie v. Seal* was a suit against the correct party, but the plaintiff sued that party using the wrong name for the defendant. The Virginia Supreme Court held that, where the defendant had raised no objection to the use of the wrong name, the subsequent judgment against defendant in the wrong name was binding against it. The Supreme Court stated the Virginia rule as follows: "Where the mistake in the name of the corporation, whether plaintiff or defendant, is slight, and it clearly appears what corporation is meant – or as it is sometimes expressed, where the *pleading incorrectly names* a corporation, but correctly describes it – the mistake is amendable and can be taken advantage of only by plea in abatement. But where the error is so material (especially, it is said, in the name of the defendant), that *no such* corporation exists, it is fatal at the trial." *Leckie, supra*, at 223 (*emphasis in original*).

The rule of *Leckie* is of very little use to the court in this case, however, because it deals with whether a judgment is binding against a defendant when

the corporate name used to name that defendant is wrong. In the instant case, the name used for the plaintiff in the motion for judgment was the correct corporate name as of the time of the filing of suit, not the wrong name, as in *Leckie*. *Leckie*, in essence, dealt with notice and the fairness of making a defendant answerable for a judgment taken against it in the wrong name. Because the defendant in *Leckie* knew it was the entity against whom judgment was sought, even if the name was wrong, the defendant was answerable for the judgment. The issue here, in contrast, has nothing to do with either fairness or notice to the defendant at the time the suit was filed against it. This defendant certainly knows, and has notice of, exactly who is bringing suit, and thus is not answerable for a judgment where it lacked notice.[1]

*Lorcom House Condominium, supra,* is of little guidance as well to the court, in part because the facts of the case are not set out in the opinion. In that case, the circuit court judge stated only that the plaintiff had filed a motion for judgment against a contractor for allegedly making improper structural repairs to the plaintiff condominium. The court stated, as to the motion to dismiss and demurrer that were before it, "[T]he primary thrust of the Motion to Dismiss was directed at the propriety of maintaining an action by a juridical non-entity." The court concluded, with no further explanation, "[I]t is the opinion of this Court that Plaintiff's Motion for Judgment be dismissed." The court concluded that the motion for judgment was "*totally deficient* insofar as the standing or capacity of the named parties are concerned," specifically referring to the capacity of plaintiff, Lorcom House Condominium, to sue. *Lorcom House, supra* at 228 (citing *Wittington Condominium Apartments, Inc., v. Braemar Corp.,* 313 So. 2d 463 (1975)) (emphasis in original).

The court's only explanation of why the capacity of Lorcom House Condominium was "totally deficient" was that the plaintiff "had no cause of action against the named defendants." Although the circuit court sets out nothing further in its opinion, the opinion is apparently based on the fact that a condominium must sue in the name of its board of directors; therefore Lorcom House Condominiums, as the named plaintiff, did not enjoy the right to sue under Virginia law, which required a condominium to sue either through its board of directors in the name of the corporation that owned the condominiums or through the condominium association. Because the suit was

---

[1] *Leckie* gives no guidance on the second issue: whether the plaintiff could, on November 8, 1993, contract and incur obligations and benefits by using a corporate name that it was not entitled to use at the time of the formation of the contract.

brought in the wrong name and by the wrong body, the circuit court judge opined that any judgment on its behalf would be a nullity, relying on *Leckie, supra*, as well as *Rockwell v. Allman*, 211 Va. 560 (1971).

Because Lorcom House Condominium was a "non-entity," any judgment granted to a plaintiff nonentity would be a nullity; thus, the case "cannot continue to final judgment," and the court, therefore dismissed it. *Lorcom House, supra*, at 228.[2] However, there is no comparable Virginia law barring *this* plaintiff from suing. The corporate successor to Mr. Lundy's former sole proprietorship roofing business is the corporation that he formed in 1995. A corporation has the right to bring suit on any debts owed to its predecessor in the corporate name. Nor is the plaintiff in the instant suit a nonentity, in contrast to the plaintiff in *Lorcom House*. In fact, the parties have stipulated, and the defendant itself entered a certificate from the S.C.C. showing, that Doug Discount Roofing Company, Inc., is not today a nonentity, but rather a corporation in good standing in Virginia since September 29, 1995. Therefore, as the plaintiff is not a nonentity, any judgment in its behalf would not be a nullity, in contrast to the facts in *Lorcom House, supra*.

*Lorcom House* relied in part on *Leckie v. Seal, supra*. In *Leckie*, the court stated that a motion for judgment for or on behalf of a corporation that is misnamed is nonamendable – that is, not a matter that can be corrected by amending the name of the corporation – where the error is so material that "*no such* corporation exists … ." *Leckie, supra*, at 223 (emphasis in original). Here, in contrast, the agreed amendment at the hearing of August 14, 1997, eliminated the apostrophe s ('s) from the plaintiff's name, leaving the name now reflecting correctly its corporate name as of September 29, 1995: Doug Discount Roofing, Inc. Unlike the facts in *Leckie*, such a corporation does, in fact, exist.

The circuit judge in *Lorcom House* also relied on *Rockwell v. Allman, Adm'r of the Estate of Shotwell*, 211 Va. 560 (1971). The plaintiff in *Rockwell* brought a personal injury suit for damages received from a collision; plaintiff sought to name as defendant the administrator of the estate of Mrs. Shotwell, the driver of the vehicle that collided with the truck plaintiff was driving. On the day of trial, defense counsel moved for summary judgment on the grounds that defendant Allman had not been validly appointed as administrator for the deceased driver, Mrs. Shotwell, because the court making the appointment lacked jurisdiction to do so. Plaintiff Rockwell's suit could not go forward, as it was brought against the wrong person, defendant

---

[2]  The issue in *Lorcom House*, was the plaintiff's capacity to sue, not its capacity to contract; thus, *Lorcom House*, as well, is not instructive on the second issue raised by the demurrer.

claimed. Plaintiff Rockwell then moved the court to allow him to amend his motion for judgment "to correct a misnomer" by substituting for Mr. Allman the proper administratrices of Mrs. Shotwell's estate. The trial court refused the motion to amend and granted the defendant's motion for summary judgment, finding that, under the facts of the case, there was no misnomer, or misnaming of the correct person, but rather a suit against the entirely wrong person.

On appeal, the Virginia Supreme Court agreed with the trial court that the naming of Allman, who was not in fact the valid administrator of the estate of Mrs. Shotwell, was not a misnomer. The appellate court explained that a misnomer is a mistake in name, but not person. In a misnomer, the correct person is sued, but a wrong name is used in the suit. The Supreme Court ruled that in *Rockwell* the wrong person in fact was named – Allman, who was not, in fact, the administrator of Mrs. Shotwell's estate. Such an error, the court concluded, could not be corrected by labeling it a misnomer. Because Allman's appointment as administrator was void, any judgment rendered against him would be a nullity because, in fact, he was not the administrator of Mrs. Shotwell's estate. The actual administratrices, whom the plaintiff had sought to substitute for Allman as party defendants on the date of trial, were in fact *different persons* from Allman. Allman, the City Sergeant of Roanoke, had been appointed by the circuit court pursuant to statute merely in order to allow the suit to go forward; he bore no relation in interest to the actual administratrices of Mrs. Shotwell's estate. In addition, the two actual administratrices of Mrs. Shotwell's estate had never been served with process. *Rockwell, supra,* at 561. Thus, the denial of the amendment on the date of trial was upheld.

The court in *Rockwell* compared its holding to that of *Jacobson v. Southern Biscuit Co.*, 198 Va. 813 (1957), in which an amendment was permitted to the pleadings because the right party was before the court, "although under a wrong name." *Id.* The court in *Rockwell* found that the party before the court – Allman as administrator of the estate of Mrs. Shotwell – "was not the right party because his appointment as administrator was void." There is no analogy between the instant case before this court and *Rockwell, supra.* In *Rockwell*, the wrong party was before the court. In the instant case, there is no contention that the proper party is not before the court as plaintiff; there is only an issue as to the proper name to be given to that party. This case is, in contrast, comparable to *Jacobson*: here, the right *party* brought suit "although under a wrong name." *Jacobson, supra.* Thus, the

defendant's demurrer, based on the issue of the plaintiff's suing in the wrong name, is overruled.

The second issue presented by the demurrer is whether plaintiff corporation can bring suit on its behalf on a contract signed in its corporate name before, in fact, the plaintiff was incorporated. Stated otherwise, is the contract Mr. Lundy signed, purportedly as president of a corporation, but of a corporation that did not exist at that time, a valid contract, in light of the lack of corporate status at that time? The court must determine whether the legal effect of signing a contract in a corporate name one is not entitled to use is that no valid contract is formed and thus any purported contract is unenforceable.[3] This second issue was not clearly presented to the court in defendant's demurrer and no legal authorities were presented.[4] In fact, none of the cases cited by the defendant deal with that second issue; all of them deal with the issue of whether the proper party is before the court at the time of bringing the motion for judgment – either because the wrong person is suing or was sued, as in *Rockwell*, or because the corporate name was not precisely

---

[3] It is true that this ruling would mean that, if the plaintiff's allegation of its full performance of the contract is true, the plaintiff nevertheless could not be paid under the contract. That does not negate its possible right to recover, outside the contract, on a theory of quasi-contract or unjust enrichment.

[4] For example, the parties should examine the cases on agency for analogy. An agent who purports to sign on behalf of his principal, is deemed himself to be personally liable, if, in fact, the agent, in signing, was operating outside of the scope of his authority. If an entity purports to contract as a corporation and, in fact, is not properly incorporated, under Virginia law, the legal liability rests with the individual, who is seen as operating as a sole proprietorship and thus held to be personally liable for any debts. An individual who purports to act as a corporation and, in fact, is not lawfully a corporation, bears the liability — duties and responsibilities — for the obligation incurred, rather than enjoying the corporate shield against individual liability, if the other contracting party sues for breach of that contract. However, here the individual who signed in the corporate name is not claimed to be the breaching party and thus is not seeking to raise a corporate shield to his liability. Rather, the individual is bringing suit, under the amended motion for judgment, as "Doug Discount Roofing Company, Inc., formerly in business as James Lundy trading as Doug Discount Roofing Company, Inc." That suit title reflects the fact that, because Mr. Lundy was not entitled to trade as a corporation, at the time of contracting, he is treated by the law as in fact operating at that time as James Lundy, an individual who was trading under another name, in this case, the corporate name of Doug Discount Roofing, Inc. Because the corporation that was subsequently incorporated is a successor to Mr. Lundy trading under that corporate name, it may sue in that name to recover on those prior debts of its predecessor. The question that remains is: was Lundy entitled to contract, using a corporate name, when he was not a corporation, and, if not, what effect does that unlawful use of a corporate name have on the validity of the contract? Agency and corporate law should offer some analogies, if not precise answers.

correct, as in *Leckie*, or because the suit was brought by a non-entity, that is, a party not entitled under Virginia law to bring that type of suit, as in *Lorcom House*. This court cannot properly rule on this second issue raised by the defendant's demurrer without some legal authority.

Counsel for plaintiff is directed to prepare and circulate an order overruling defendant's demurrer on the plaintiff's right to bring suit in the name of the corporation that did not exist when the contract was signed. This court will allow defendant to demur a second time to the plaintiff's amended motion for judgment, this time properly briefing the issue of whether plaintiff could contract on February 8, 1993, in the name of a corporation when plaintiff did not enjoy corporate status at that time, and, if it could not contract in that name, what is the effect of its purporting to sign a contract in a corporate name it was not entitled to use at the time of the contracting. Plaintiff's amended motion for judgment merely changes the style of the case; this opinion treats defendant's demurrer as if it were to the amended motion for judgment and overrules that demurrer.